CASE 60—PETITION ORDINARY—MAY 29.

## Bohon's Assignee v. Brown, &c.

APPEAL FROM WASHINGTON CIRCUIT COURT.

1. PEDDLERS' NOTE—CONFLICT OF LAWS—CONSTITUTIONAL LAW—POLICE POWER.—The requirement of section 4223, of the Kentucky Statutes, that persons who sell patent rights shall have written

on the face of the notes executed in consideration therefor the words "peddlers' note," is not in conflict with the Federal Patent Laws, and does not limit the right of the patentee, or his assignees in disposing of the patent right; but is only the exercise of a police power designed by the State to protect its citizens against fraud and imposition of itinerant persons.

2. PLEADING.—An answer in such cases which failed to allege that the payee of the note were itinerant persons or peddlers at the time of the sale of the patent rights or execution of the note in contest, was insufficient, the allegation that the note "is what is denominated by the laws of Kentucky as a peddler's note," being merely a legal conclusion.

3. NEGOTIABLE INSTRUMENTS EXECUTED IN VIOLATION OF STATUTORY PROVISIONS—ESTOPPEL—As a general rule one who executes a negotiable promissory note knowing it to be the subject of barter and sale in the commercial world, and does not put into it words that would give warning to others not to buy it, is estopped from making a defense to the same after it has passed into the hands of a bank in this State; but where a statute in direct terms declares that a note given in violation of its provisions shall be void, it is so, no matter into whose hands it may pass.

P. W. HARDIN FOR APPELLANT.

CLEMENTS & THURMAN FOR APPELLEES.

(Record and briefs not in the office.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The complaint of appellant is based upon a promissory note executed by appellees Brown and Wells to Webb & Camp, which was made negotiable and payable at a bank in this State, and which was endorsed by the payees to one George Bohon and was by Bohon discounted and assigned to appellant for value, before its maturity, it being a banking institution organized under the national banking laws of the United States.

Judgment is resisted by appellee upon the ground that

the note sued on was executed in consideration of the right
to sell in 25 counties of the State, exclusively, what was
represented to be "The Webb & Camp Patent Automatic
Broom Holder," and upon the further consideration that the
payees were to furnish promptly, upon order and at agreed
prices, such number of the patented articles as might be
desired by appellees in the business of selling; and they
further allege that payees were never the owners of any
such patent as the note was given for, and that the note was
procured from them by false and fraudulent representations
as to the ownership of the alleged patent and by other fraudu-
lent devices.

They further allege that under the statute, the note sued
on having been executed for the sale of territory for a patent
right, it should have had written across the face of it the
words, "Peddlers' Note," and not having such endorsement
the note was null and void under the statute, and that
appellant was not a purchaser in good faith without notice
and before maturity of the consideration of the obligation
sued on.

All the affirmative allegations of the answer were denied
by reply. The law and facts were submitted to the chan-
cellor for trial, and he made a separate finding of his con-
clusions of fact, holding that the proof showed that the note
sued on was executed for the right to sell a patent automatic
broom holder; that the payees, before maturity and for
value, assigned it to Bohon, and that the proof further
conduced to show that Bohon afterwards assigned the note
to plaintiff, after receiving full information of the considera-
tion of the note and of all appellees' alleged defenses, that

the note was procured by false and fraudulent representations, without valuable consideration, and that it was a peddlers' note and did not have endorsed across the face of it the words "Peddlers' Note," as required by law. And the chancellor held that the note was absolutely void, and dismissed the petition of appellant.

The appeal is from that judgment, and a reversal is asked cn the grounds,

First. That section 4223 of the Kentucky Statutes is unconstitutional because it is in conflict with the patent laws of the United States, being an attempt on the part of the legislature to limit the right of a patentee, or his assignee, to dispose of a right secured to him by the laws of the National Government.

Second. Because the note sued on is, by the provisions of section 483 of the Kentucky Statutes, placed upon the footing of a foreign bill of exchange, and, having been discounted in good faith before maturity by plaintiff, appellees are estopped from denying liability.

1st. Is the statute requiring persons who sell patent rights to have written across the face of the notes, executed to them in consideration therefor, the words "Peddlers' Note" in conflict with the federal laws? In our opinion it is not, and the statute is valid because it is only the exercise of a police power which properly belongs to the State. The right to prescribe regulations for the protection of its citizens against fraud and imposition is not taken from the State by the Federal Constitution or by any national statute; on the contrary, it may be considered as having been authoritatively settled that the National Government can not exercise police

powers for the protection of the inhabitants of a State. These are local matters, and must be governed and regulated by the State. (See U. S. v. Dewitt, 9 Wallace, 41; U. S. v. Reese, 92 U. S., 214; Mann v. Ills., 94 U. S. 113; Civil Rights cases, 109 U. S., 3, and Breechbill v. Randolph, 102 Ind., 528; Tod v. Wick, 36 Ohio, 370.)

In the case of Patterson v. the State of Kentucky., 97 U. S., 501, the court uses this language:

"It is true that letters patent, pursuing the words of the statute, do, in terms, grant to the inventor, his heirs and assigns, the exclusive right to make, use and vend to others his invention or discovery, throughout the United States and the territories thereof. But, obviously, this right is not granted or secured, without reference to the general powers which the several States of the Union unquestionably possess over their purely domestic affairs, whether of internal commerce or of police. * * * By the settled doctrines of this court the police power extends, at least, to the protection of the lives, the health and the property of the community against the injurious exercise by any citizen of his own rights. * * * State legislation, strictly and legitimately for police purposes, does not, in the sense of the Constitution, necessarily intrench upon any authority which has been confided, expressly or by implication, to the National Government. * * * This court has never hesitated, by the most rigid rules of construction, to guard the commercial power of Congress against encroachment in the form or under the guise of State regulation, established for the purpose and with the effect of destroying or impairing the rights secured by the Constitution. It has, nevertheless, with marked

distinctness and uniformity, recognized the necessity, grow-ing out of the fundamental conditions of civil society, of upholding State police regulations which were enacted in good faith, and had appropriate and direct connection with that protection to life, health and property, which each State owes to her citizens."

Mr. Cooley says: "In the American constitutional system, the power to establish ordinary regulations of police has been left with the individual States, and can not be assumed by the National Government. (Constitutional Limitations, 574.)

There is nothing in this statute which discriminates against the sale of a patent right, nor does it usurp any power of the National Government or violate any federal law, but it simply prescribes a method to secure the citizens of the State from being imposed upon by men who have either no authority to sell patent rights or no patent rights to sell; and it would be monstrous to assert that the vendors of patent rights can not be restrained by reasonable police regulations, and we are, therefore of the opinion that the provisions of the statute, being in the nature of a police regulation, are constitutional and valid.

Nor does this construction in any wise conflict with the adjudications of this court, in the case of the Commonwealth v. Petty, 16 Ky. L. R., which is referred to and relied on. There it was held that the act requiring persons selling, or offering to sell, patent rights, or territory for the use, manu-facture and sale of patent rights, to pay a license tax before making such sale, was unconstitutional and void, because, as stated by the learned judge, "If the legislature had authority to require the patentee or his assignee to procure

and pay for this privilege, there is no limit to the extent of such requirement, and the legislature could fix this license fee so high as to destroy the commercial value of the right, and thus indirectly destroy the power which is in Congress by the federal Constitution to promote the progress of science and the useful arts." In this case there is no discrimination against this particular species of property, denounced by the statute and no attempt to prevent its legitimate and proper sale, and it is a proper police regulation.

The State legislature has the right to say what paper may be placed upon the footing of a foreign bill of exchange. It is a privilege that has always been exercised, and is purely a creature of the statute. The legislature would unquestionably have the power to repeal section 483, which defines what manner of paper may be placed upon the footing of a foreign bill of exchange and deprive promissory notes of all the characteristics and privileges of such bills; and certainly it could not be contended in such a case that a promissory note executed in consideration of a patent right granted by the Federal Government would be entitled to any higher or greater privileges than other promissory notes. The statute places no restriction on the sale of a patent right; it only attempts to prevent itinerant persons who are "here to-day and there to-morrow" from practicing frauds upon the ignorant and credulous.

Now, as to the second contention made by the defendant, what are the rights of appellant as the *bona fide* holder of the paper sued on? It may be stated, as a general rule of law, that one who executes a negotiable promissory note knowing that it is the subject of barter and sale in the

commercial world, and does not put into it any words which would give warning to others not to buy it, is estopped from making defense to same after it has passed into the hands of a bank of this State, but there are exceptions to this general rule; and all the decisions agree that where the statute in direct terms declares that a note given in violation of its provisions shall be void, it is so, no matter into whose hands it may pass.

This doctrine was laid down in the case of Vallett v. Parker (6 Wendell, 615), the court holding that "Wherever the statutes declare notes void, they are, and must be so, in the hands of every holder; but where they are adjudged by the court to be so, for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had the notice of the consideration."

Mr. Daniel, in his work on Negotiable Instruments, draws this distinction very clearly. He says (section 197), "The *bona fide* holder for value, who has received the paper in the usual course of business is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed *mala in se,* and those founded in positive statutory prohibition, which are termed *mala prohibita.* The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule; that when a statute, expressly or by necessary

implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it; though even upon such instruments an endorser may, as we shall hereafter see, be held liable. There are very few cases in which the statute renders such instruments absolutely void; and the most important, if not the only instances now to be met with, are the statutes against usury and gaming."

In the case of Cochran v. German Insurance Bank, 9 R., 196, the Superior Court held that "A bill or note based upon a gambling consideration is absolutely void, and the drawer or maker is not bound to even an innocent holder," and in the case of the Farmers & Drovers' Bank of Louisville v. Unser, 13 Ky., L. R. 966, the court says: "The whole current of authority is that the obligor may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value in all those cases in which he can point to an express declaration of the legislature that such an illegality makes the contract void," referring to the cases of Sondheim v. Gilbert, 117 Ind., 71; 10 Am., St. R., 23; Chapin v. Dake, 57 Ill., 295; 11 Am., R., 15; Snoddy v. Bank, 88 Tenn., 573; 17 Am. St. R., 919; Cochran v. German Ins. Bank, *supra*. "However," the court in that opinion says, "though the note was based on a gambling consideration, the endorsers are liable, for they engaged that the note is a valid and subsisting obligation, binding on all prior parties according to their ostensible relations, and they will be held liable, although the instrument be entirely null and void as between the prior parties themselves, and also as between such prior parties and the *bona fide* holders

without notice," referring to Daniel on Negotiable Instruments.

We therefore conclude that section 4223 violates no constitutional rights of those selling patent rights granted by the National Government, and that the legislature had the power to require the words "Peddlers' Note" to be written across the face of all notes executed for articles sold by a peddler, or itinerant person, as prescribed in section 4116 of the Kentucky Statutes, and to declare them null and void for failure to conform to this requirement. But the statute only requires the words "Peddler's Note" to be written across notes given for articles sold by a peddler, or an itinerant person. It does not apply to a vendor who has a fixed place of business; the fact that the vendor was an itinerant person is a necessary allegation to sustain their defense.

There is no averment, either in the original or amended answer that the payees of the note sued on were itinerant persons, or peddlers, at the time of the sale of the patent right or the execution of the note in contest. The allegation of the petition that the note "is what is denominated, under the laws of Kentucky, a peddler's note," is a mere legal conclusion. And without this averment and proof of it, the note is not void under the provisions of section 4223. The demurrer of plaintiff to defendant's answer should have been sustained for this reason. Nor does this fact appear anywhere in the record.

Wherefore the cause is reversed and remanded, with instructions to sustain the demurrer of plaintiff, allow defendants to amend if they desire, and for further proceedings consistent with this opinion.