CASE 97.—ACTION BY B. M. McDEVITT AGAINST R. L. THOMAS FOR MONEY LOANED.—December 11.

## McDevitt v. Thomas

Appeal from Kenton Circuit Court.

M. L. HARBESON, Circuit Judge.

Judgment for defendant. Plaintiff appeals.—Reversed

1. Gaming — Loans for Gambling Purposes — Betting on Horse Races.—Ky. St. 1903, section 1955. as to the clause avoiding every contract, conveyance, transfer, or assurance, in consideration of money won, lost, or bet in any game, sport, pastime, or wager, has no application to a loan of money to be bet by the lender on horses designated by the borrower.

2. Same.—Betting upon a horse race is not "gaming," within Ky St. 1903, section 1955, avoiding every contract in consideration of money lent or advanced for the purpose of gaming, but that word applies only to betting upon a game played with cards, dice machine, wheel, or other contrivance.

3. Same.—A loan of money to be bet by the lender on horses designated by the borrower is within the clause of Ky. St.

McDevitt v. Thomas.

1903, section 1955, which avoids every contract in consideration of money lent or advanced at the time of any betting or wagering to a person then actually engaged in betting or wagering.

MYERS & HOWARD for appellant.

1. It is respectfully submitted that under the Kentucky decisions, betting on horse races is not "gaming," and, so far as the transaction in this case is concerned, that part of section 1955, Ky. Statutes, which might be invoked in aid of appellee's defense to the indebtedness sued on, applies only to "gaming," the wagering features having been repealed by the General Assembly.

2. Sutherland on statutory construction, says that legislative bodies are supposed to act and must be presumed to have acted with full knowledge of the law as it existed at the time of their action, and of course, must be presumed to have known the effect of their action.

AUTHORITIES CITED.

Ky. Stats., 1955; Cheek v. Commonwealth, 79 Ky., 360; Am. & Eng. Encyc. of Law, 14, 666; Cheek v. Commonwealth, 100 Ky., 2; Greathouse v. Throckmorton, 7 J. J| Mar., 29; Triplett v. Seelbach, 11 Ky. Law Rep., 283; White v. Wilson, 91 Ky. 33; Alfriend v. Hughes, 4 Bush, 41; Section 1, Chapter 42, Stanton's Revised Statute, Entitled "Gaming"; Alexander & Co. v. Hazenrigg, 29 Ky. Law Rep., 1212.)

T. E. MOORE, JR., for appellee.

1. There are three express prohibitions in Kentucky Statutes, section 1955, which prevents any one from recovering money under what is generally known as a wagering contract. The first is that every contract where the consideration, in whole, or in part, is for money lost or bet in any game, etc. is wholly void. The second is where money is lent or advanced for the purpose of gaming, is wholly void. The third prohibition is that where money is lent or advanced at the time of any betting or gaming or wagering, etc., is wholly void.

AUTHORITIES CITED.

Ky. Stats., 1955; Allfriend v. Hughes, 4 Bush, 40; Aleander &

McDevitt v. Thomas.

Co. v. Hazelrigg, 29 Ky. Law Rep., 1212; Cooley v. Allen, 28 Ky. Law Rep., 982.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

B. M. McDevitt sued R. L. Thomas for $5,840.50, balance due to him for money loaned. The defendant answered in two paragraphs. The first is a traverse. In the second, he pleads: That the plaintiff was the operator of a poolroom in Jefferson county, Ky., for the purpose of receiving bets and wagers on the results of horse races; that, during the time covered by plaintiff's account, horse races were being conducted at the Fort Erie race track, near the city of Buffalo, N. Y.; that he and the plaintiff entered into an agreement by which the plaintiff was to receive bets and wagers on the races which were then being conducted at said race track, and on the result of these races the plaintiff agreed to receive wagers from the defendant, at the average track odds, that would not cause the plaintiff to lose a greater sum than $3,000; that pursuant to said agreement he made wagers with the plaintiff to the amount of $5,196 upon horses running at said track, and that they were all lost by him to the plaintiff; that thereafter, in the month of August, when the races were being conducted at the Empire track near New York City, under said agreement he made certain other wagers upon the results of horse races being run at said last-named track, and as a result of wagers with plaintiff on races run at the last-named track the plaintiff was indebted to him in the sum of $5,500; and on the result of the wagers or bets made with plaintiff at the two tracks there was due him from plaintiff the sum of $304; that all of said bets or

wagers were made by telegrams; that no money passed from the one to the other on any of said bets; that each of said wagers was made in Jefferson county, Ky., at plaintiff's poolroom; and that the agreement made between plaintiff and defendant to wager and bet on the result of said horse races was a contract for the consideration of money bet and wagered on the result of a sport or pastime, and was in violation of the statute of gaming, and he pleads and relies upon said statute to defeat the recovery of any claim or claims as set out by plaintiff in his petition. Thereafter plaintiff filed a reply, in which he denied that he was at the time mentioned in the petition, or at all, the operator of a poolroom in Jefferson county, or elsewhere. Denied that he agreed to or did receive bets on horses then running at Fort Erie, and later at Empire City. Denies that he made any agreement or contract with the defendant for the consideration of money bet or wagered on the result of a sport or pastime. Denied that he made any agreement or did anything in violation of the statute of gaming, or any other statute whatever. Upon the issues thus joined, a jury was impaneled, and the plaintiff was introduced in his own behalf, and testified, in substance: That he had known defendant seven or eight years, and that they had various business transactions during that time. That at the request of defendant he had placed for him, as bets or wagers upon horses, sums amounting in the aggregate to $8,840.54. That no part of this had been repaid to him by the defendant, except $3,000. That he made no bet or wager except at the especial instance and request of the defendant; these requests being communicated to him by telegraph. That he made no bet with the defendant, and charged him no

commission for his services. That there was still due and unpaid him on the moneys so advanced or loaned by him to the defendant at the instance and request of defendant, communicated to him by telegram, a balance of $5,840.50. This was all of the evidence heard, and thereupon the court instructed the jury peremptorily to find for the defendant, which was done, and plaintiff's petition was dismissed. A motion and grounds for a new trial was filed, heard, and overruled, and plaintiff appeals.

The evidence in this case establishes the fact that the plaintiff, at the especial instance and request of his personal friend, the defendant, had furnished the money to bet for him on horses designated by defendant, and which were then running at the Fort Erie and Empire City race tracks, the several sums set out in the account filed with the petition; that no part of said money so furnished by plaintiff for the defendant has been repaid to plaintiff, except $3,000; and that there is still due plaintiff on this account the sum of $5,840.50. The trial judge was of the opinion that the transaction disclosed by the evidence brought the case within the provisions of section 1955 of the Kentucky Statutes of 1903, and hence the peremptory instruction.

Under the evidence in this case the defendant owes plaintiff this money, and should be made to pay it, unless the anti-wagering or anti-betting act, under which he seeks shelter, denies to plaintiff the right to have the payment of his claim enforced. This act is as follows: "Section 1955. Every contract, conveyance, transfer or assurance, for the consideration, in whole or in part, of money, property, or other thing won, lost or bet in any game, sport, pastime, wager, or for the consideration of money, property, or other

thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming or wagering, shall be void.'' For convenience this act may be divided into three sections: First: ''Every contract, conveyance, transfer or assurance, for the consideration, in whole or in part, of money, property, or other thing won, lost, or bet in any game, sport or pastime or wager * * * shall be void.'' Second: ''Every contract * * * for the consideration of money, property, or other thing lent or advanced for the purpose of gaming, * * * shall be void.'' Third: ''Every contract for the consideration of money lent or advanced at the time of any betting, gaming or wagering to a person then actually engaged in betting, gaming or wagering, shall be void.'' The first subdivision has no application to the question under consideration; nor does the second subdivision apply, for betting upon the result of a horse race is not ''gaming'' within the meaning of the statute. The word ''gaming,'' as used in the statute, has a rather restricted meaning, and applies only to betting upon the result of some game played with cards, dice, machine, wheel, or other contrivance. But the third subdivision provides that: ''Every contract for the consideration of money lent or advanced at the time of any betting, gaming or wagering to a person then actually engaged in betting, gaming or wagering, shall be void''—the words ''betting'' and ''wagering'' have a much broader and more comprehensive meaning that the word ''gaming.'' They are unrestricted in their scope, and it is immaterial whether the subject of the wager is one denounced or prohibited by statute or not. The subject of a wager may be, and frequently is, a perfectly innocent pastime, or a legally authorized act; such as the test of

McDevitt v. Thomas.

speed of animals or men, or the result of an election, or it may be based upon a mere matter of opinion or the exercise of judgment, such as the height of a mountain, the width of a river, the distance of an object, or the weight of a given article. Hence it is immaterial what the wager or bet is about. The purpose of the statute is to discourage betting or wagering by declaring all contracts relative thereto void, and by this means lessen what is generally regarded as a social evil. This statute imposes no punishment for the violation of any of its provisions, but simply provides that all contracts defined therein shall be void, and the law will not lend its aid looking to the enforcement of any such. The subject-matter of this litigation falls clearly within the provision of subdivision 3 of section 1955, Ky. Stats., as above indicated, and the appellee having pleaded this act in order to evade the payment of his debt, we are of opinion that the trial judge did not err in giving the peremptory instruction.

The judgment is affirmed.