LOCKNEY STATE BANK v. MARTIN.
(No. 1091.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1917. Rehearing Denied Feb. 7, 1917.)

BILLS AND NOTES ☞375—SUBSCRIPTIONS TO STOCK—RIGHTS OF BONA FIDE HOLDERS.

The Constitution provides that no corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void. Rev. St. 1911, art. 1146, provides that a corporation violating this provision forfeits its charter. Article 1147 provides that, when stock is issued for anything but money, labor, or property, the Attorney General may institute quo warranto proceedings to cancel such stock. *Held*, that, as the Constitution forbids the issue of stock except for money, labor, or property, but does not declare a note executed for that purpose void, while such note is void as between the original parties and those with notice, or who have not paid value, it is enforceable in the hands of a holder before maturity for value without notice and in the due course of trade.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 971–981; Dec. Dig. ☞375.]

Hall, J., dissenting.

Appeal from District Court, Motley County; Jo A. P. Dickson, Judge.

Suit by the Lockney State Bank against W. B. Martin. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered.

Crudgington & Works, of Amarillo, for appellant. G. E. Hamilton and T. T. Bouldin, both of Matador, for appellee.

HUFF, C. J. The appellant bank brought suit against Martin upon a negotiable note executed February 1, 1913, by appellee, Martin, due 12 months after date, payable to R. L. Underwood or order, for the sum of $500, with interest thereon at the rate of 8 per cent. from date until paid, and the usual ten per cent. attorney's fees. This note is indorsed in blank by R. L. Underwood. The appellant bank alleged that it was the holder of the note for value, acquiring the same before maturity in due course of trade, without any notice of infirmities in the note.

Martin, by answer, set up that Underwood was the agent of the Bankers' Trust Company of Amarillo, and selling stock therefor, alleging certain representations and promises made to induce Martin to sign the note, which did induce him to sign it, upon which it is alleged Martin relied, and that the same were untrue, etc. He further alleges that the note was executed in payment for stock in the Bankers' Trust Company, which was issued to him for the note, and that the same was therefore void and in violation of the Constitution and laws of Texas.

The trial court instructed a verdict for the appellee, Martin, on the ground that the note was absolutely null and void. The appellant requested an instructed verdict in its favor, which was refused by the court.

Under proper assignments of error the action of the court, in giving and refusing the instructions are presented to this court. It is contended that the evidence in this case is conclusive that appellant had no notice of any fact indicating that the note was in any way connected with the issuance of stock, and that it shows affirmatively that it and its immediate assignors were innocent purchasers of the note for value before maturity and in due course of trade.

The note on its face shows to be a plain, promissory, negotiable note, payable to R. L. Underwood or order, and without any indication on its face for what it was given or that the Bankers' Trust Company was in any way connected with it. The facts are uncontroverted that Underwood took the note and traded it to Waller & Dyer for an automobile in the town of Floydada; that they took this note in part payment of the automobile, together with some horses and a small amount of money; that Underwood represented to them that Martin had executed to him the note in payment of a span of mares that Underwood had sold to Martin. The evidence is conclusive that this note was then indorsed in blank by Underwood and

delivered to Waller & Dyer, and that it was so transferred before maturity. Some of the testimony is that it was transferred in the latter part of February. Martin himself shows that he knew that Underwood had the automobile not later than in June following its date. There is no controversy in the testimony but that Waller & Dyer paid value before maturity of the note, and that they had no notice that it was executed for stock in the corporation. The evidence also shows that within a few days after selling this auto to Underwood for the note, in a deal for another auto in the town of Amarillo, Waller & Dyer procured the money from appellant bank to pay therefor, executing their note for something over $600, and put the note in question up with the bank as collateral security therefor. All the bank officials testifying state that they had no notice or knowledge that this note was given for stock in the corporation. Martin himself admits that he never told any of these parties that he had executed the note on that consideration. The evidence is certain that neither the bank nor Waller & Dyer had any notice of the consideration for the note until after its maturity. There is an assignment to the effect that the evidence does not conclusively show that the Bankers' Trust Company issued the stock to Martin for the note. Without discussing this evidence, we are inclined to believe the testimony was not so conclusive to that effect that the court was authorized to take the case from the jury but that he should have submitted the question to the jury.

On the question of whether or not an innocent holder can recover on a note given for stock in corporation, the decisions of this state leave the question very much in doubt. This court, in the case of Prudential Life Insurance Co. v. Smyer, 183 S. W. 825, held that a note given for stock in a corporation is void in the hands of an indorsee for value, and without notice of its illegal issue. A writ of error has been granted by the Supreme Court in that case, on the ground, so we are informed, that there is doubt by that court as to the correctness of the holding with reference to an innocent holder of such note. The Court of Civil Appeals for the Fifth District, in the case of Republic Trust Co. v. Taylor, 184 S. W. 772, reached the same conclusion as did this court in the Smyer Case. In the F. & M. Bank v. Falvey, 175 S. W. 833, the Court of Civil Appeals for the First District announced the same rule, while the question was not there necessary to a decision of the case.

This court, in the case of Jones v. Abernathy, 174 S. W. 682, announced substantially the same rule, but not on a note given for stock. It should be noted, however, the holding therein was based upon a statute which expressly provided such indebtedness secured by a lien upon railroad property,

without complying with other provisions of the act, should be void. In the case of Sturdevant v. Falvey, 176 S. W. 908, the court found and held in that case that the indorsee had notice that the note was given for the issuance of stock by the note itself.

The action of the Supreme Court in the Smyer Case, having cast a doubt on the correctness of the holdings by this court, has induced us to again enter into an examination of the authorities, which has resulted in bringing us to the same condition of mind the Supreme Court appears to be in.

"The protection which the law extends to an innocent holder, who for value in the usual course of trade has received negotiable paper, is of no avail where the statute in terms, or by unavoidable implication, has pronounced the instrument absolutely void." Ruling Case Law, vol. 3, Bills and Notes, § 225.

As a general rule, one who executes a negotiable instrument, knowing it is subject to barter and sale in the commercial world, and does not put into it words which give warning to others not to buy it, is estopped to make a defense after it has passed into the hands of the holder in due course of trade.

"Wherever the statutes declare notes void, they are and must be so in the hands of every holder; but where they are adjudged by the court to be so, for failure or illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with or have had notice of the consideration." Vallett v. Parker, 6 Wend. (N. Y.) 615.

The above is cited and quoted in Bohon's Assignee v. Brown, 101 Ky. 354, 41 S. W. 273, 38 L. R. A. 503, 72 Am. St. Rep. 420.

"The effect of illegality on a bona fide purchaser is held by the authorities to be different from that of mere insufficiency of consideration, at least in certain cases. Where the consideration is declared by the decisions of the court or by statutory enactments to be simply void on account of illegality, it does not affect the validity of the contract any more than the mere absence of a consideration would affect it; and the bona fide holder of a commercial instrument would nevertheless be able to maintain his action upon it. But where the statute making the consideration illegal declares a contract founded on such a consideration to be absolutely void, the language of the statute must be given its proper effect, and so the courts have held that the commercial paper founded on such consideration is void, even in the hands of bona fide holders." Tiedeman on Commercial Paper, § 178.

"Where the statute merely declares expressly or by implication that the consideration shall be deemed illegal, the bill or note founded upon such consideration will be valid in the hands of a bona fide holder without notice, but the burden of proof will be upon the plaintiff." 1 Daniel on Negotiable Inst. § 198.

[1] The constitutional provision (article 12, § 6) with reference to issuing stock is:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 1146, R. C. S., provides that a corporation violating this provision forfeits its charter; and article 1147, R. C. S., provides when stock is issued for anything but

money, labor, or property, the Attorney General may institute quo warranto proceedings to cancel and hold for naught such stock. These provisions and others, it appears to us, simply show that the law applies to the corporation and its stockholders, rendering the issuance of stock without money paid illegal, and the stock therefore void. It does not occur to us that the Constitution or the statutes intended to inflict upon innocent third parties a penalty that should be borne by a corporation or stockholder seeking to foist upon the public a worthless concern. The execution of a note for such stock is doubtless void as between the corporation and the maker of the note. The Constitution and laws do not declare the contract absolutely void, the consideration of which is void or illegal. It must, if so held, be adjudged by the courts on the ground that the note is given for an illegal or void consideration. It is not by an unavoidable implication from the wording of the law made manifest that it was the purpose thereof to declare such note void absolutely as to all the world. It is the issuance of the stock for the note which is forbidden. It is such act which subjects the corporation to a forfeiture of its charter and which will cancel the stock. It appears to us that in construing the Constitution it has been treated as if it declared the note given for the stock absolutely void. This is not our interpretation. It declares the issuance of stock, or, in other words, the consideration for the note, illegal or void. Union Trust Co. v. Preston National Bank, 136 Mich. 460, 99 N. W. 399, 112 Am. St. Rep. 370; Hart v. Livermore, 72 Miss. 809, 17 South. 769. Certain conditions may arise which would estop the corporation or stockholder from defeating the obligation. The law which is intended to protect innocent third parties ought not to be construed so as to defraud others who do not know of such fraud or illegal acts. The doctrine of estoppel has been applied by this court to notes of this character in the interest of the creditors of a corporation upon it becoming insolvent. We held a corporation in such a situation would preclude the contention by the maker that the note was void. McWhirter v. First State Bank, 182 S. W. 684; Thompson v. Bank, 189 S. W. 116. If this proposition there announced is sound, the note is not absolutely void as to all the world. If the maker in that instance could not defeat the creditors out of collection, the reason is as strong, it occurs to us, that the maker should not defeat an innocent purchaser of his note, which he had knowingly placed in circulation without any evidence of its character or the consideration upon which it was based. He should be estopped from claiming that he executed it in violation of the law and for the purpose of defeating the law. The case of Mason v. Bank, 156 S. W. 366, is cited in the Taylor

Case, supra, apparently as supporting the proposition that the note is absolutely void. In that case the court held according to the plea that the holder had notice of the note's infirmities, and hence he stood in the shoes of the original payee. The Mason Case also, while apparently holding the note void, yet distinguishes it from Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015, and Nenny v. Waddill, 6 Tex. Civ. App. 244, 25 S. W. 309, on the ground that those cases were brought on behalf of the creditors of the corporation. Those cases evidently recognize the rights of creditors to be the same as found by us in the Thompson and McWhirter Cases, supra. The case of Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593, is cited in the Taylor Case as supporting the contention that the note is absolutely void in the hands of an innocent holder. In that case the note was given for a debt growing out of "cotton futures." Judge Stayton, who rendered the opinion, was careful to hold that as between the parties it was void. Davis v. Sittig, 65 Tex. 497. The note in that case, though negotiable in form, was transferred without indorsement, was not in the possession of the payee, and the assignee was not shown to have paid value. In Wegner Bros. v. Biering, 65 Tex. 506, the question of innocent purchaser was not involved. The suit was brought by the payee in the note, who was charged with the illegal act in obtaining the agreement to pay. The question discussed in that case was whether the entire note was tainted, since part of it was for a valid debt, and the other portion for an illegal consideration.

In the case of Thompson v. Samuels (Sup.) 14 S. W. 143, the facts, as stated by the court, are: Ben Hilmbrower was indebted to J. R. Mahone, and Mack Samuels owed Hilmbrower $100 for money lost at a game of cards. Hilmbrower drew a draft on Samuels in favor of Mahone for the $100. In settlement of the draft Samuels executed and delivered his promissory note, dated March 1, 1887, payable to Mahone or bearer six months after date. Mahone transferred the note by indorsement to John C. Thompson, before maturity, for a valuable consideration, without notice of any vice or illegality in the consideration for which it was given. The Commission of Appeals rendered the opinion in that case. Judge Acker reviewed various decisions in this state and others declaring that a gambling note was void and some that it was void in the hands of an innocent holder. After citing cases from various states the court in the Thompson Case said:

"That these decisions rest upon statutes expressly declaring all such contracts void," and, "in the absence of such statutes, we do not believe authority can be found for holding that the maker of a negotiable promissory note can defend against it, in the hands of an innocent holder for value, upon the ground that it was given in consideration of money won at gaming."

1 Daniels on Negotiable Instruments, § 197, is also quoted, and also the excerpt quoted by us from Vallett v. Parker, 6 Wend. (N. Y.) 615, and then concludes:

"While gaming of various kinds is denounced by our Penal Code, we have no statute in this state declaring that all contracts entered into upon gaming considerations are void."

In the case of State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564, the Supreme Court cites the case of Thompson v. Samuels with approval. It is said in that case:

"In Thompson v. Samuels [Sup.] 14 S. W. 143, the question now before the court was presented and decided. In writing the opinion Mr. Justice Acker reviewed prior decisions of this court at length and arrived at the conclusion that, while some of the opinions used the expression that contracts similar to that then under consideration were void, yet the court did not mean to hold such contracts to be void in the sense that they were not enforceable as between the maker of the contract and an innocent holder for value."

It was further said therein that the Thompson Case had not been officially reported, "but it is authority, and appears to be the latest authority, from this court upon the question." The expression, or use of the term "void" is used in the Deutschmann Case, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, with reference to contracts in violation of the provision of the Constitution now under consideration. The opinion in the Holland Case, supra, was writttten by the same judge, and is, we think, persuasive that the court only used the term "void" as applicable between the original parties and persons having notice of the infirmity of the note.

In Campbell v. Jones, 2 Tex. Civ. App. 263, 21 S. W. 723, it was held the holder of a note by indorsement before maturity for value, and without notice of the defense against the original payee, could recover, even though it was given in consideration of intoxicating liquors sold to the maker in violation of the law and the bond executed by the sellers, to the effect that they would not sell to habitual drunkards, nor to persons after having received notice from the wife, mother, etc.

In the case of Scheffel v. Smith, 169 S. W. 1131, it is held a note given for commission on the sale of stock in a corporation in violation of the law, could not be defeated in the hands of an innocent purchaser. It is said therein:

"The laws of this state do not expressly or by necessary implication declare void a note given for commissions on a sale of the stock of a corporation; * * * therefore, under the rule quoted in State Bank of Chicago v. Holland, the protection of the law is extended to the instrument here sued upon and to the appellee as a purchaser thereof for value before maturity and without notice of any infirmity in its execution."

[2] In Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593, it is there expressly held that the broker who effected the sale was a particeps criminis, and could not recover for services rendered or money paid in the sale of the cotton futures. By analogy and the principles of law, if a note given for a commission earned in the sale of stock is good in the hands of an innocent holder, the note given for the stock should be held good under the same circumstances. Snoddy v. American National Bank, 88 Tenn. 573, 13 S. W. 127, 7 L. R. A. 705, 17 Am. St. Rep. 918, is frequently referred to by the various courts and commentators as authority for the proposition that a note given for a gambling debt is void in the hands of an innocent holder. Thomas v. Samuels, above cited, rendered by our court, based on statutes against gambling, reached a different conclusion, on the ground that our statutes do not so declare the note void. It will be seen upon investigation that nearly all the cases holding a note void in the hands of an innocent holder are based on statutes expressly so declaring. It appears to us, after examining quite a number of authorities, that the rule that should govern this case is stated in Sondheim v Gilbert, 117 Ind. 71, 18 N. E. 687, 5 L. R. A. 432, 10 Am. St. Rep. 23:

"The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the Legislature that the illegality insisted upon shall make the security, whether contract, bill, or note, void; but, unless the Legislature has so declared, then, no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for value will be held valid and enforceable."

See, also, Union Trust Co. v. Preston National Bank, 136 Mich. 460, 99 N. W. 399, 112 Am. St. Rep. 370; Pope v. Hanke, 155 Ill. 617, 40 N. E. 839, 28 L. R. A. 568; Lynchburg National Bank v. Scott, 91 Va. 652, 22 S. E. 487, 29 L. R. A. 827, 50 Am. St. Rep. 860; Citizens' State Bank v. Nore, 67 Neb. 69, 93 N. W. 160, 60 L. R. A. 737.

Under the rule above announced, in order for the note to be void in the hands of an innocent holder, the statute or Constitution must expressly, or "by necessary implication declare the instrument absolutely void." By necessary implication the statute must declare the note absolutely void. Where it is an inference by the court that the instrument is void, because of failure or illegal consideration, it is not void as to an innocent holder. It is against the law to gamble or bet on games. A note given for a debt so created is upon an illegal consideration and void as between the original parties not because the statute so declares, or because of an implication from the terms of the statute. It is against the law to sell intoxicating liquors to an habitual drunkard, and a note for such sale is upon an illegal consideration. The statute does not so declare, neither is it necessarily implied from the wording of the statute that it was the

purpose of the act to declare a note so given void; but it is so, if at all, because adjudged to be upon an illegal consideration. The Constitution forbids the issue of stock except for money, etc., but it does not declare a note void executed for that purpose. It may be adjudicated and determined that it is upon an illegal consideration, and therefore void, but it is not a necessary implication from the Constitution that it so declares. The statutes do not declare the note void as a punishment inflicted upon the corporation, or for any other purpose, but the charter of the corporation may be forfeited and the stockholders stock canceled. The court may, from the constitutional and statutory provisions, adjudge and determine the consideration for the note to be illegal and therefore void, but the statutes do not expressly so declare, nor is it a necessary implication from the statutes, that they declare such a note void.

To hold the statute expressly or by implication declares a note void because it is an inference from the Constitution or statute that the consideration therefor is illegal and therefore void, unless the note is so declared by statute, would be to hold every note based upon an illegal consideration void in the hands of a bona fide holder. That such is not the rule is universally recognized by our courts and all the courts, except in such cases where the statute, as in Georgia, provides the defenses a maker may set up against a bona fide holder, under section 3694 of that state's Code, "which declares that such a holder, without notice, shall be protected from any defenses set up by the maker, * * * except non est factum, gambling, or immoral and illegal consideration, or fraud in its procurement." Jones v. Dannenberg, 112 Ga. 426, 37 S. E. 729, 52 L. R. A. 271. We cite in support of this rule Daniels on Neg. Inst.:

"The bona fide holder for value, who has received the paper in the usual course of business, is unaffected by the fact that it originated in an illegal consideration, without any distinction between the cases of illegality founded on moral crime or turpitude, which are termed mala in se, and those founded in positive statutory prohibition, which are termed mala prohibita. The law extends this peculiar protection to negotiable instruments because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule, that when a statute expressly or by necessary implication declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it, though even upon such instrument an indorser may, as we shall hereafter see, be held to be a bona fide holder without notice. There are very few cases in which·the statute renders such instruments absolutely void, and the most important, if not the only, instance now to be met with are the statutes against usury and gaming." Daniel on Neg. Inst. § 197; also sections 807 and 808.

It will be observed that in Thompson v. Samuels, supra, our court held a note for a gambling debt not absolutely void on the ground that our statute did not so expressly declare.

In the case of Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031, the rule stated by Daniels is recognized as to usury. The statute of this state provides that when usury is charged the contract for interest is void.

We therefore hold, under the established rule by all or nearly all of the courts, and by all the writers on negotiable instruments, that a note given for the issuance of stock in a corporation is void as between the original parties to the note and those with notice or who have not paid value; but in the hands of the holder, who acquired it before maturity for value, without notice of its infirmities, and in due course of trade, it is not as to such holder void.

We believe the trial court should have given the appellant's special instruction, and the case will be reversed, and here rendered.

HALL, J. I respectfully dissent from the conclusion announced in the majority opinion that the note is valid in the hands of an innocent purchaser for value. We held in Prudential Life Insurance Co. v. Smyer, 183 S. W. 825, that article 12, § 6, of the state Constitution by necessary implication inhibited the execution of a note in payment for stock, and rendered the note void, even in the hands of an innocent purchaser. To the same effect is Crawford v. Davis, 188 S. W. 436, also by this court, Strudevant v. Falvey, 176 S. W. 908, and Republic Trust Co. v. Taylor, 184 S. W. 772. It is admitted that article 12, § 6, of the Constitution, supra, does not expressly declare that a note given for stock in a corporation is void, nor does it expressly declare that the stock so issued is void, yet the Legislature, by the enactment of article 1147 (Vernon's Sayles' Civil Statutes), has construed that constitutional provision as a declaration that the stock is void, and by that statute has made it the duty of the Attorney General to file suit to cancel the stock or any renewal thereof. The terms "money," "labor," and "property" reasonably include every supposable consideration for which a corporation could issue stock, except a promise, either written or verbal, to pay for it in the future, and my position is that the legal maxim, "Expressio unius est exclusio alterius," applies, and that, when the Constitution specifically names three of the only four possible considerations for which stock may be issued, the fourth is necessarily excluded. In other words, the constitutional provision by necessary implication makes a note given for stock as well as the stock itself void ab initio. If the constitutional provision was "corporations may issue stock or bonds for money, labor or property," such language would not unavoidably imply that an issue of stock in exchange for notes would make either the stock or the notes void between the parties to the

transaction; but when the language is "no corporation shall issue," it is mandatory, and cannot be held to be directory (6 R. C. L. p. 55, § 50); and when it further declares that stock shall not issue "except for money paid, labor done or property actually received," I think the necessary implication is that the stock and the promise to pay for it as well are both void.' The constitutional provision is negative in its terms, and the use of negative words in a statute or Constitution is conclusive of an intent to impose a limitation. Cooley's Constitutional Limitation (6th Ed.) p. 94; People ex rel. Mooney v. Hutchinson, 172 Ill. 486, 50 N. E. 499, 40 L. R. A. 770.

"Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz. that the thing shall not be done otherwise." 19 Cyc. 26, 27.

The limitation here is that any consideration for stock except "money paid, labor done, or property actually received," is absolutely void. The purpose of the constitutional provision in question is expressed by Judge Brown in O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Tex. 434, 108 S. W. 968, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865:

"The purpose of the convention in enacting that provision of the Constitution was to secure creditors as well as stockholders of corporations against the practice which was too common of corporations issuing fictitious stock and stock upon an insufficient consideration, whereby the actual capital was much less than the amount represented by the shares issued and sold by the corporation. The terms in which this section of the Constitution is expressed indicate the purpose that the assets of the corporation should be something substantial, and of such a character that they could be subjected to the payment of claims against the corporation as well as to secure the shareholders in their rights in the capital stock."

Evidently the writer of that opinion did not consider a promissory note as "something substantial." Notwithstanding the fact that Deutschmann, in the case of San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, had, as an attorney, rendered valuable services for the original company under an agreement whereby he should thereafter have one-third of the stock in said company, to be paid for at such time as he could arrange, Judge Brown, after quoting the section of the Constitution, said:

"The contract which Deutschmann sets up, by which he was not to pay for the stock any money at the time of its issue, is plainly and unquestionably in violation of the Constitution of the state, and, being in violation of the Constitution, that agreement, in so far as it provided that Deutschmann should have all the time he might find necessary in which to pay for his stock, was void."

It is true that Duetschmann's promise to pay was verbal, but, of course, the rule is the same when the promise to pay in the future is evidenced by a promissory note. As sustaining the position last above announced, Judge Brown cites the case of Will-

191 S.W.—51

liams v. Evans, 87 Ala. 726, 6 South. 703, 6 L. R. A. 218, in which it is said:

"It is too plain for argument that, under the evidence, if the plaintiff can recover at all, it must be under the third count, which claims the price agreed to be paid for the sale of 50 shares of stock in the Decatur Land Company. The bill of exceptions sets out all the evidence, and this evidence, in our opinion, shows a contract in violation of section 6, art. 14, of the Constitution (1875), which provides that 'no corporation shall issue stock, or bonds, except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void.'"

It will be observed, as is remarked by Judge Brown, after citing the case, that this provision of the Constitution of Alabama is not quite as emphatic as our own. As shown, that was a case where the seller of stock had agreed to issue certificates in excess of the amount paid, and the holding was that the agreement or promise to pay was void. The language of the opinion is in part as follows:

"The contract necessarily implied by this transaction is one which seems to us to be in violation of the section of the Constitution above quoted; and this is the consideration of the defendant's promise. * * * A contract which contemplates the violation of a statute, or a Constitution, as a mode of executing such contract, is illegal and void. It is based on an unlawful consideration, and, if executory, cannot be enforced."

Enabling statutes on the principle of "Expressio unius est exclusio alterius" impliedly prohibit any other than the statutory mode of doing the acts which they authorize. Sutherland, Statutory Construction, § 454; Parks v. West, 102 Tex. 11, 111 S. W. 726. What is expressed is exlusive when it is in derogation of existing law. Sutherland, Statutory Construction, § 325. Before the adoption of the Constitution of 1876, the law did not prohibit the sale of corporate stock upon credit, and the provision in question was designed to remedy that evil.

"In accordance with the maxim, 'Expressio unius est exclusio alterius,' where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned, and where it directs the performance of certain things in a particular manner, it forbids by implication every other manner of performance." 36 Cyc. 1122.

The opinion in the Deutschmann Case and the authorities cited therein by Judge Brown do not hold that the stock alone was void, but that the entire contract was void, and this necessarily includes the note. It is admitted and universally held that the language of the Constitution necessarily implies that the stock is void. Then why not the note also? The one is the consideration for the other; together they evidence the illegal transaction; without both there is no contract at all. They came into existence at the same time, and if we are to infer that by the language of the Constitution one is condemned, there is no good reason why the same inference should not damn the other.

Believing that the provision under consid-

eration necessarily implies that, not only the stock, but the written promise to pay for it, are both void, I think the trial court properly refused the special instruction, and that its judgment should be affirmed.