## DOBBS v. HOLDER.

Court of Appeals of Kentucky.

Sept. 25, 1951.

L. D. Deters, Louisville, for appellants.

H. Bemis Lawrance, Louisville, Terill A. Wilson, Jamestown, for appellee.

STEWART, Justice.

On November 18, 1947, appellee, Glenvo Holder, executed and delivered a check on the First National Bank at Russell Springs Kentucky, to Ralph Barnes in Louisville, Kentucky, for $1,800 to cover a gambling loss. Payment on this check was stopped by the drawer before it could be cashed by the payee. On November 20, 1947, Barnes went to appellants, whom we shall hereafter call "Hull Dobbs", an automobile sales firm in Louisville, and purchased a Ford DeLuxe coupe from the latter for $1,751.50. He offered to indorse over the $1,800 check in payment therefor. Hull Dobbs, who knew Holder, accepted the check for the purchase price of the car and gave Barnes the balance of $48.50 in cash. Barnes did not tell Hull Dobbs the circumstances under which the check was acquired, nor did he reveal to the automobile dealer the fact that payment had been stopped on the check when he attempted to cash it at Holder's bank.

On November 22, 1947, Holder took to Hull Dobbs a new Chevrolet automobile and sold it to this firm for $2,225. The sale price of the car was paid to appellee by a check drawn on Hull Dobbs for $2,225. No conversation occurred between Holder and Hull Dobbs, during the transaction, concerning the $1,800 check held by the latter. On or about November 24, 1947, appellee's check to Barnes was returned to Hull Dobb's depositary bank with a notation "Payment Stopped". Hull Dobbs then stopped payment on their $2,225 check to Holder.

Holder instituted this action against Hull Dobbs in the Second Division of the Common Pleas Branch of the Jefferson Circuit Court to recover the proceeds of the $2,225 check. By answer and set-off Hull Dobbs claimed a credit of $1,800 against appellee's claim based upon the check given by Holder to Barnes and indorsed over by the latter to appellants; and Hull Dobbs tendered the difference of $425 into court which amount they averred was the extent of their indebtedness to Holder. In his reply, Holder alleged that the check executed and delivered by him to Barnes was without lawful and valid consideration representing money lost by him and won by Barnes while they were gambling. On September 6, 1950, the case having been submitted to the lower court on the pleadings and stipulations, without the intervention of a jury, judgment was rendered against Hull Dobbs in the amount of $2,225 with interest and costs. $425 had been paid into court by Hull Dobbs and credited against the judgment, leaving a

disputed balance of $1,800, plus accrued interest thereon. Barnes, although made a party defendant below, did not appeal.

It was stipulated that there was nothing upon the face of the $1,800 check to put Hull Dobbs upon notice or inquiry as to its regularity and validity; that Hull Dobbs became the holder of it before it was overdue, without notice that it had been previously dishonored; that the automobile firm accepted the check in good faith and for value; that they had no notice of any infirmity in the instrument or that it was in payment of a gambling debt; and that neither Hull Dobbs nor any of their agents or employees engaged at any time in gaming or wagering with Holder or Barnes.

It is the contention of appellants, Hull Dobbs, that under a proper construction of KRS 372.010 and KRS 372.020 a note, check or other personal property cannot be recovered from the transferee of the winner, provided the latter was not actually engaged in betting, gaming, or wagering and provided, further, that the transferee of the winner did not have notice of the consideration.

KRS 372.010 reads as follows: "Every contract, conveyance, transfer or assurance for the consideration, in whole or in part, of money, property or other thing won, lost or bet in any game, sport, pastime or wager, or for the consideration of money, property or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then actually engaged in betting, gaming, or wagering, is void."

KRS 372.020 is in the following language: "If any person loses to another at one time, or within twenty-four hours, five dollars or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice."

The important question presented for decision on this appeal is whether a check admittedly given in payment of an indebtedness arising out of a gambling transaction and declared void by statute can be validated by transfer to an innocent holder for value?

The whole current of authority is that a check or other evidence of indebtedness based upon a gambling consideration is absolutely void, and the obligor is not bound to even an innocent holder of the instrument. Union National Bank v. Brown, 101 Ky. 354, 41 S.W. 273, 38 L.R.A. 503; Levy v. Doerhoefer's Ex'r, 188 Ky. 413, 222 S.W. 515, 11 A.L.R. 207; and Thompson v. First State Bank of Irvington, 216 Ky. 703, 288 S.W. 702. Nor did the Negotiable Instrument Act of 1904, KRS 356.001 et seq., passed subsequently to the above quoted gambling statute modify in any respect the provisions of the latter. See Alexander & Co. v. Hazelrigg, 123 Ky. 677, 97 S.W. 353. It is also well settled that when a statute expressly declares the instrument void, it gathers no vitality by its circulation with respect to the party executing it. The case of Whitaker v. Smith, 255 Ky. 339, 73 S.W.2d 1105, 1106, 95 A.L.R. 727, has this to say concerning transactions that are void ab initio, to wit: "The almost universal rule regarding such contracts (void contracts) is that they are void and may not be enforced, not only as between the original parties thereto, but likewise are they prohibited from enforcement by one who may become the holder of them in due course, and which is upon the ground that being void they never had any obligatory force and are no more binding upon the maker than if he had never executed them. The theory upon which that conclusion was

reached is that the Legislature in so providing (i. e., that the particular contract should be void) did so in furtherance of what it conceived to be a wholesome public policy, and that to prevent that policy from being thwarted through the act of an assignment of the instrument (or contract) would put it into the hands of the parties to it to defeat such declared public policy."

Wherefore, the judgment is affirmed.