## Unger *versus* Boas.

*A negotiable note given for a gaming consideration is void, in the hands of even an innocent holder for value.*

ERROR to the Common Pleas of *Dauphin county.*

This was an action of assumpsit by Unger as indorsee against Boas, to recover on a note dated in April, 1846, for $200. The Note was payable to the order of Boas, and by him indorsed.— The plaintiff claimed as being an innocent indorsee, without notice, and that the note was taken by him for a valuable consideration.

Defence was made on the ground that the note was given for a gaming debt at the time and place of play; and that it was void; that the defendant was playing at a faro table, in the city of Philadelphia, and that he gave the note in suit, and a number of other notes of the same character, in exchange for ivory checks, or counters, used at the gaming table, and afterwards lost the checks at the game. The notes were taken as money by the banker.

His Honor, PEARSON, J., charged the jury that if the note was

given under these circumstances, it was utterly void in the hands of the present holder.

Verdict was rendered for defendant.

It was assigned for error:

That the court erred in charging that a negotiable note, if originally given for a gaming consideration, is void in the hands of an innocent indorsee, for value.

The case was argued by *Berryhill*, for plaintiff in error.—He contended that the paper was protected by the principles of commercial law; that though it had been decided in England that such a note was void in the hands of an innocent holder for value, yet this was because the English statute would not bear any other construction; but he contended that the language of our act of 1794 was not so conclusive, *Purdon* 535, sec. 8. He cited 7 *Barr* 476; 2 *Barr* 103; 15 *Johns.* 44; *Wash. C. C.* 100.

*McCormick,* for defendant, cited 8th sec. of the act of 22d April, 1794; *Dunlop* 201; 2 *Strange* 1155; 3 *Bacon's Ab.* 340, *title Gaming;* 8 *Ala.* 138; 5 *Mass.* 286; 4 *do.* 156–161; 7 *Watts* 294; *do.* 343; 7 *W. & S.* 233; 3 *Kent* 79, 80; *Story on Pro. Notes* 211, 218, sec. 192, *and note*; *Chitty on Con.* 240, 241, 242.

The opinion of the court was delivered by

BURNSIDE, J.—The statute of Anne, ch. 14, sec. 1, makes notes given for money lost at play utterly void, frustrate and of none effect to all intents and purposes whatsoever, 4 *Bacon Ab. Title Gaming.* By the act of our legislature against gaming, *Dunlop's Dig.* 201, act of April, 22, 1794; 3 *Smith's Laws* 177, sec. 8, persons losing money at any game of address or hazard, play or game whatsoever, "shall not be compelled to pay or make good the same; and every contract, note, bill, bond, judgment, mortgage, or other security or conveyance whatsoever, given, granted, drawn or entered into, for the security or satisfaction of the same, or any part thereof, shall be utterly void and of none effect." Both the English and American statutes render the contract, for payment, utterly void and of none effect. In Bowyer *vs.* Bampton, 2 *Strange* 1155, the Court of King's Bench, after two full arguments, held that the innocent *indorsee* of a gaming note can maintain no action against the drawer. The question whether a bill of exchange, with a blank indorsement, being stolen and negotiated to an innocent indorsee, could be recovered, came before Lord Mansfield, *Doug.* 636, Peacock *vs.* Rhodes, and another, and his Lordship, in delivering the opinion of the court, declared that he was glad that this question was saved, not for its

difficulty, but because it is important that general commercial points should be publicly decided.

He declared the law to be settled, "that a holder, coming fairly by the bill or note, has nothing to do with the transaction between the original parties, except perhaps in the single case, (which he calls a hard one,) of a note for money won at play." LEE, C. J. puts it on the same ground, viz: that the statute makes it void to all intents and purposes. The gamester makes use of the note to pay his own debt, or to receive money on it. If the innocent indorsee is to recover, it will be a means to evade the act, it being so difficult to prove notice to the indorsee; "and though it will be some inconvenience to an innocent man, yet that will not be a balance to those on the other side. And the plaintiff is not without remedy; for he may sue (the indorser) on his indorsement.— And it is but the common hazard of taking notes of infants or *feme coverts,*" 2 *Strange* 1155. The argument here is that commerce is to be encouraged, and therefore we ought to decide in favor of an innocent indorsee. I am well satisfied that we shall not send a vessel less to sea, by taking from commerce the uncertain aid of faro banks and other gaming tables.

The judgment is affirmed.