GARDNER S. CHAPIN *et al.*

*v.*

MOSES W. DAKE.

1. GAMING—*indorsement of commercial paper in consideration of, void.*
A party in possession of two drafts for $1000 each, drawn in his favor,

having lost $1500 at gaming, indorsed the same and delivered them to the winner, receiving by way of change, $500 in money : *Held*, that under our statute against gaming the indorsement was void, and the property in the drafts remained in the payee ; and although in the hands of an innocent holder for value, the legal consequence of such an indorsement must, under the statute, be the same—that no more effect could be given to it than to a forged indorsement.

2.   SAME—*chancery, jurisdiction.*   A court of equity has jurisdiction in such case to compel the holder to surrender the drafts to the payee.

3.   But the payee, to entitle him to recover the drafts, should pay to the holder the $500 which he received by way of change in paying his loss with the drafts.

4.   SAME—*interest, whether can be recovered.*   Nor should he be allowed interest on the drafts.   All the statute enables him to recover, is the money or thing lost, with costs.

5.   COSTS—*in such case—against whom to be adjudged.*   The payee having filed a bill in chancery in which the first indorsee, the drawer, and the holder of the drafts, were made parties defendant, to enjoin their payment by the drawer to the holder, the drawee having refused to pay them, and to have his indorsement cancelled and the drafts delivered up to him, upon a cross bill filed by the drawer, averring his readiness at all times to pay the drafts to the lawful owner, and offering to pay the amount into court, with prayer that the different claimants interplead and settle the ownership of the drafts, it was *held,* a decree allowing the complainant in the cross bill $100 for solicitor's fees was erroneous.   Only his costs should have been allowed.

6.   In such case the costs of the original, but not of the cross bill, would be properly adjudged against the first indorsee.

APPEAL from the Superior Court of Chicago ; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a suit in chancery, brought by Moses W. Dake, against John Donaldson, the Fifth National Bank of Chicago, and Gardner S. Chapin and J. J. Gore, partners, doing business under the firm name of Chapin & Gore, to have two certain drafts for $1000 each, in the hands of Chapin & Gore, delivered to the complainant, in whose favor they were drawn by the Fifth National Bank of Chicago, on the Ninth National Bank of New York, and by him indorsed to Donaldson ; and to have his indorsements thereof cancelled, and to enjoin the payment

of the drafts by the Fifth National Bank of Chicago, the Ninth National Bank of New York having refused to pay them to Chapin & Gore, to whom Donaldson had indorsed them. The Fifth National Bank of Chicago filed a cross bill, averring its readiness at all times to pay the drafts to the lawful owner, but alleging that as there were several claimants it could not pay, etc., without an order of court, concluding with prayer, that Dake, Donaldson and Chapin & Gore interplead and settle the ownership of the drafts; offering to pay the amount into court, or to either litigant, being indemnified by the court, and praying that all the litigants be restrained from bringing suit against it for the collection of the drafts.

Donaldson failing to answer either the original bill, or the cross bill of the Fifth National Bank, default and decree *pro confesso* were entered against him as to both bills.

Upon a final hearing, the court found the property in the drafts to be in Dake, and that he was entitled to the money specified therein, less the sum of $100 to be paid to the solicitors of the Fifth National Bank for fees, and ordered that the Fifth National Bank pay into court for Dake the sum of $2000, less $100 for solicitor's fees; that the injunction issued on the original bill be made perpetual; that Chapin & Gore and Donaldson pay the costs of suit, and that Chapin & Gore pay all costs on the cross bill; that upon payment of $1900 by the Fifth National Bank into court, it should be forever released from any and all liability upon the drafts, and that the injunction issued on the cross bill be made perpetual; and that Chapin & Gore pay Dake $56.67 interest upon the face of the drafts, and the sum of $100 retained by the Fifth National Bank out of the drafts, in all $156.67, with interest on that sum from the date of the decree.

Chapin & Gore appeal.

Mr. C. M. HARDY, for the appellants.

Mr. W. T. BURGESS, for the appellee.

298      CHAPIN *et al. v.* DAKE.      [Sept. T.,

Opinion of the Court.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by Moses W. Dake , to have two certain drafts for $1000 each, drawn by the Fifth National Bank of Chicago, upon the Ninth National Bank of New York, payable to the order of said Dake, at sight, by him indorsed and in the hands of Chapin & Gore, delivered to said Dake and the indorsements cancelled, and to enjoin the payment of the same to Chapin & Gore, on the alleged ground that the drafts were lost by Dake at gaming, and subsequently came into the hands of Chapin & Gore as indorsees.

It appears that Dake staked one of said drafts, after first indorsing it, and lost it, playing faro, and that it was delivered to one Donaldson, who was in some way concerned in receiving the proceeds of the faro bank.

That Dake then staked the other draft, lost $500, delivered the draft, indorsed by him, in payment of his loss, and received from the dealer $500 in currency in change.

The first section of the gaming act declares, that all promises, notes, bills, contracts or other securities made etc., upon any gambling consideration, shall be void and of no effect.

The second section enables the loser to recover, by action at law, from the winner, any money or valuable thing, or its value, lost at play, amounting to the sum of $10.

The third section provides, that all notes, bills, promises, agreements, and other acts, etc., executed contrary to the provisions of the act may be set aside by any court of equity, etc.; and the fourth section provides that no assignment of any bill, note, agreement or other security, etc., as aforesaid, shall in any manner affect the defense of the person entering into or executing the same, or the remedies of any person interested therein.

Under the broad language of the statute, and within its true meaning, we think the indorsement of these drafts was void; that Chapin & Gore, although *bona fide* holders, acquired no

title thereby in the drafts, and that the property in them still remains in Dake.

The indorsement of the drafts was a contract or agreement between the parties—it is said, that a transfer by *indorsement* is equivalent in its effect to the drawing of a bill; the indorsement was clearly void as between the parties to the transaction, and, we think, under the statute, the legal consequence must be the same of such an indorsement in the hands of a *bona fide* holder,—that no more effect is to be given to it than to a forged indorsement. Such a construction is necessary to effectuate the intention of the statute, and prevent its being avoided by making use of antecedent securities and transferring them to innocent parties.

Under the English statute of Queen Anne, substantially like ours, a bill of exchange or promissory note given for a gambling debt is held void in the hands of a *bona fide* holder. Chitty on Bills, 111 a, ed. of 1836. And it is so in those cases in which the legislature has declared that the *illegality* of the contract or consideration shall make the *security*, whether bill or note, *void.* Id. 115.

This act of indorsement was contrary to the provisions of the statute, and the third section provides that acts contrary to the provisions of the statute, may be vacated by a court of equity; and, under section four, no assignment of any bill, note, agreement, etc., shall in any manner affect the defense of the person executing the same, or the remedies of any person interested therein.

The appellee's loss was only $1500; he has now in his hands $500, which he received by way of change, in paying a loss of $500 with a $1000 draft. He can not hold that $500, and recover the two drafts in full. He would thereby reap a profit of $500 out of this gaming transaction; this he should not be suffered to do, by the aid of a court of equity. To entitle himself to the relief he claims, he must do equity by refunding to Chapin & Gore this $500.

On the cross bill of the Fifth National Bank, it should not have been allowed $100 solicitor's fees, but only its costs. It should have paid an additional $100 into court.

There should not have been any allowance to the appellee of interest on the drafts.

All the statute enables him to recover, is the money or things lost, with costs.

The costs of the original suit, but not of the cross bill, would have been properly adjudged against Donaldson.

The decree of the court below must be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*

LAWRENCE, CHIEF JUSTICE, SCOTT, JUSTICE, and McALLISTER, JUSTICE: We can not concur with the majority of the court in holding that an innocent indorsee of the drafts in question, who has taken them in due course of trade, and upon a valuable consideration, should be required to surrender them.