## H. G. SEELIGSON V. LEWIS & WILLIAMS.

(Case No. 1811)

1. CONTRACTS—FUTURES—A contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the gooods nor any other means of getting them than to go into the market and buy them ; but such a contract is valid only when the parties really intend and agree that the goods are to be delivered by the seller and the price is to be paid by the buyer.
2. SAME—WAGERS—PUBLIC POLICY—If, under the guise of such a contract, the real intent of the parties be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference

between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, is contrary to public policy and is void.

3. SAME—PLEADING—See opinion in this case for a plea held to allege matters such as, if true, would constitute a contract made for the sale of a commodity to be delivered at a future day, a mere wager or gambling contract.

4. SAME—BROKERS—When a broker is privy to the unlawful design of the parties to an illegal contract and becomes an actor through whom the thing is to be done, and contracts to perform the acts necessary to its achievement, he is *particeps criminis* and· cannot recover for services rendered or money paid by him on behalf of either in furthering the transaction.

5. SAME—ADVANCES—CONSIDERATION—If the course of business be such that the broker is expected to make advances of money, then his employment is a request to him to do what the course of business requires, and the liability to repay him will depend, not upon whether the promise to pay was made before or after the transaction in which the advances were made, but on whether that transaction was legal or illegal. The law implies a promise to pay when one person, at the request of another, discharges for the latter a legal obligation to a third person or performs for him some lawful service ; but when the request is to do some act illegal in its nature, and out of the act itself springs the claim of one of the actors, then no promise to pay can arise in favor of the actor from his compliance with the request, for in such case, there is no valid consideration to support a promise, express or implied.

6. SAME—As between parties to illegal transactions, no one of them can recover for anything done or promised in carrying out the illegal enterprise. It is immaterial what the form of the undertaking may be, such acts, whether they consist in services or in the expenditure of money, on request, cannot constitute a valid consideration.

7. SAME—PROMISSORY NOTES—A promissory note given for a debt arising, in whole or in part, out of an illegal transaction, is, as between the parties, void for want of consideration.

8.·SAME—CONSIDERATION—PUBLIC POLICY—If any part of the consideration for a contract is illegal the whole consideration is void, and public policy will not permit the enforcement of such a contract as between the parties, it matters not whether the consideration is illegal because it consists in some act prohibited by statute or because it violates some rule of the common law.

9. CASE OVERRULED—The case of Boggess *v.* Lilly, 18 Tex., 200, on the question of liability for money advanced in furtherance of an unlawful transaction overruled.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The case will be understood from the opinion.

*Jones & Garnett,* for appellant, on sufficiency of the plea attacking the legality of the notes, and on question of liability for money advanced and services rendered in furtherance of unlawful transactions, cited : Read *v.* Smith, 60 Tex., 379; Marx *v.* Ellsworth, Tex. Law Jour., 561; Monroe *v.* Smalley, 25 Tex., 587; Connor *v.* Mackey, 20 Tex., 747; Norvell *v.* Oury, 13 Tex., 31; Gregory *v.* Wendell, 8

Cent. Law Jour., 115; arts. in Cent. Law Jour., 221, 242, and authorities there cited; Marshall *v.* Thurston, 10 Cent. Law Jour., 242; Everingham *v.* Meigham, 15 Cent. Law Jour., 332; Cobb *v.* Prell, 22 Am. Law Reg., N. S., 609, and note to the decisions where authorities are collected.

On the proposition that if any part of the consideration for a contract is illegal, the whole contract is void, they cited : Parsons on Cont., vol. 1, pp. 456, 457 ; 7 Am. Law Reg., N. S., 572; Cobb *v.* Cowdery, and Clements *v.* Marston, 12 Am. Law Reg., N. S., 530.

*Baker, Botts & Baker,* for appellees, that, when one person, by request, pays the debt of another, although the debt may have arisen out of an illegal contract and he was aware of that fact at the time, the party who pays is entitled to recover it back from him at whose request it was paid, cited : Boggess *v.* Lilly, 18 Tex., 200; Mills *v.* Johnson, 23 Tex., 308; Lehman Bros. *v.* Strassberger, 2 Woods, 560; Armstrong *v.* Toler, 11 Wheat., 274; Brooks *v.* Martin, 2 Wall., 78; Roundtree *v.* Smith, 108 U. S., 269; Petree *v.* Hannay, 3 Tenn., 418; Thacker *v.* Hardy, 4 Queen's B., 685; Owen *v.* Davis, 1 Bailey, 315; Durant *v.* Burt, 98 Mass., 167; Clark *v.* Foss, 7 Biss., 338; Sawyer *v.* Taggart, 18 Am. Law Reg., 231.

That a note given in settlement of a debt arising out of an illegal transaction, is not tainted with the vice of the illegal enterprise, they cited: DeLeon *v.* Trivino, 49 Tex., 88; Mills *v.* Johnson, 23 Tex., 308; Pfeuffer *v.* Maltby, 54 Tex., 460 ; Read *v.* Smith, 60 Tex., 379; Planters' Bank *v.* Union Bank, 16 Wall., 500; Brooks *v.* Martin, 2 Wall., 78 ; Cook et al., ex'rs *v.* Sherman, 20 Fed. Rep., 167.

STAYTON, ASSOCIATE JUSTICE.—This action was instituted by the appellees to recover the amount of three promissory notes executed to them by the appellant.

The appellant answered by a general denial and by a sworn plea, which was as follows :

"And for further answer to plaintiffs' original and first supplemental petitions in the cause filed, this defendant says, that the three notes sued on herein by plaintiffs were not, nor was either of them, executed by the defendant for any consideration, good, valuable or sufficient in law. This defendant avers, that for some time prior to the giving of the notes, the plaintiffs were engaged in the business of brokers, in the city of New Orleans, and as such, among other things, bought and sold what is generally and commonly known as cotton futures, or futures in cotton, with the understanding between

all the parties concerned that no cotton was actually to be received or delivered, but that the sale or purchase was to be completed and finished by the paying or receiving of the difference in the price at which the cotton was sold or purchased, and the price that cotton bore on the date fixed for delivery; that this defendant employed plaintiffs to buy and sell such cotton futures for him, with the distinct understanding and agreement between them that no cotton was to be received or delivered in pursuance of any such sale or purchase, but that the difference between the price at which the purchase or sale was made, and the price of cotton on the date fixed for delivery, was to be paid by the buyer or seller, as the rise or fall in the price of cotton might require; and plaintiffs did make purchases and sales of cotton futures for defendant under and in accordance with the employment, understanding and agreement; that the purchases and sales were mere gambling transactions, with no intention, understanding or expectation, on the part of either plaintiffs or defendant, or any other party to them, at the time they were made, or at any other time, that a real sale, purchase or delivery of the cotton was made or to be made.

That after these transactions between plaintiffs and defendant had been going on for some time, plaintiffs claimed that defendant owed them a balance for advances made by them under the employment in making the sales and purchases, and in paying margins, and plaintiffs' commissions thereon, and for this balance so claimed by plaintiffs, and for no other consideration whatever, defendant executed three notes, and probably one or two other notes not sued on herein. This defendant never received any money, or other good or valuable consideration for the notes, or either of them, and there was no consideration for said notes, or either of them, except as above stated; and plaintiffs, as well as defendant, all the time well knew that the sales and purchases were gambling transactions, and that no cotton was to be received or delivered under them.

Wherefore defendant says the notes and each of them are illegal and void, and entitle plaintiffs to no recovery against defendant, and he prays hence to be dismissed with all his costs."

To this answer impeaching the consideration of the notes, the plaintiffs filed a demurrer, which was sustained by the court, and judgment then went against the defendant for the sum shown by them to be due. The action of the court in sustaining the demurrer, which was general in form, but went only to the answer set out, is assigned as error, and this presents the only question in the case. If the matters set up in the answers are true, there can be no doubt that the

transactions which form the consideration for the notes sued upon transpired in the furtherance of wager contracts, in which the appellees actively participated.    We have no statute in this state prohibiting such transactions as that set out in the answer, and the matter rests with us as at common law.    That at common law actions might be sustained on wager contracts was not universally true, and distinguished judges have regretted that courts ever felt authorized to enforce them in any case.

In Monroe v. Smalley, 25 Tex., 587, it is said:    " It is true that by the common law an action could be maintained on a wager, although the parties had no previous interest in the question on which it was laid.    But this proposition was always subject to qualifications. These qualifications were that an action could not be maintained on a wager if it was contrary to public policy, or immoral, or in any other respect tended to the detriment of the public, or if it affects the interests, feelings or character of a third person."

After reviewing cases at some length, which illustrate the tendency of later decisions, the opinion proceeds to declare the result and rule which we believe to be sustained by authority, and in harmony with the present time, in the following language:    " The uniform tendency of the later decisions is to treat all gaming contracts and all wagers as utterly void.    We feel ourselves authorized to conform our decisions to the public policy and to the sense of morality which the modern decisions and the modern legislation on the subject of gaming and wagers so clearly indicates.    We find that the ancient rule of the common law was subject to certain exceptions, and in proportion as the courts have considered these questions, these exceptions to the ancient rule have been adjudged to be more and more comprehensive in their embrace, until, as has been said, the exceptions to the rule have taken the place of the rule itself.    We think that in the true spirit and meaning of the exceptions to the old rule, all idle wagers and all gaming contracts may be properly held to be void."    To the same effect is Conner v. Mackey, 20 Tex., 748.

The transactions stated in the answer were essentially gambling transactions with no facts to give them semblance of legitimate business, and all such dealings but tend to unsettle fair and legitimate trade and to make market values to depend, not on the supply and demand, but on the fictitious elevation or depression in prices, which in extent, in any given case, will depend on the amount of capital invested in the one direction or the other.

As was well said in Melchert v. Telegraph Co., 11 Fed. Rep., 195— "such a dealing amounts to a mere speculation upon the rise and

fall of prices.  It requires no capital except the small sum to put up margins and pay differences.  It promotes no legitimate trade.  Any impecunious gambler can engage in it with infinite detriment to the *bona fide* dealer  It enables mere adventurers, at small risk, to agitate the markets, stimulate and depress prices and bring down financial ruin upon the heads of the unwary.  It enables the unscrupulous speculator, with little or no capital, to oppress and ruin the honest and legitimate trader.  Corners and black Fridays and sudden fluctuations in values are its legitimate progeny.''

In the absence of any statute prohibiting such transactions, we believe the rule thus stated by the supreme court of the United States to be that generally approved:  '' The generally approved doctrine in this country is, as stated by Mr. Benjamin, that a contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods. nor any other means of getting them than to go into the market and buy them; but such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer; and if, under guise of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void.''  Irwin *v.* Williar, 110 U. S., 508; Flagg *v.* Baldwin, 38 N. J. Eq., 227; Gregory *v.* Wendell, 39 Mich., 337; Melchert *v.* Telegraph Co., 11 Fed. Rep., 193; Pickering *v.* Cease, 79 Ill., 329; Lyon *v.* Culbertson, 83 Ill., 34; Kirkpatrick *v.* Bonsal, 72 Pa. St., 158; North *v.* Phillips, 89 Pa. St., 256; Dickson *v.* Thomas, 97 Pa. St., 288; Cobb *v.* Prell, 16 Cent. Law Jour., 443; Hooker *v.* Knab, 26 Wis., 511.

It is urged, however, that if it be admitted that the claim to secure which the notes were given, arose out of an illegal transaction in which both the appellants and appellee were engaged, yet they are entitled to recover, for two reasons:

1. Because, when one person pays the debt of another, although the debt so paid may have arisen upon an illegal contract, the party who pays it is entitled to recover it from him at whose request it was paid.

2. Because, after the illegal enterprise was ended, there was a voluntary settlement between the parties, which resulted in the promise to pay contained in the notes sued upon.

Cases have arisen in which persons were held entitled to recover

under circumstances stated in the first proposition, and the case of Boggess *v.* Lilly, 18 Tex., 200, is cited to sustain the right. This and kindred cases are hard to reconcile with many other adjudicated cases, which seem to us to stand upon better reason.

The class of cases relied upon seem to place the right to recover on the ground that the person who makes the payment at the request of another is practically a lender of money, and that such lending constitutes a valid consideration for a promise, which will not be affected by the illegality of the transaction out of which grew the claim paid.

To us this assumption seems unsound, unless the person to whom the promise is made is a stranger to the illegal transaction. This matter was so clearly expressed in the charge of the court in the case of Armstrong *v.* Toler, 11 Wheaton, 261, which was approved by the supreme court of the United States, Chief Justice Marshall delivering the opinion, that we here insert it: "I understand the rule, as now well settled, to be that where the contract grows *immediately* out of, and is connected with, an illegal or immoral act, a court of justice will not enforce it. And if the contract be in part only connected with the illegal transactions, and growing immediately out of it, though it be, in fact, a mere contract, it is equally tainted by it. The case before supposed of an action for the value of goods illegally imported for another, or freight and expenses attending, founded upon a promise express or implied, exemplifies a part of the above rule; the latter part of it may be explained by the following case: As if the importation was the result of a scheme to consign the goods to the friend of the owner, with the privily of the former, that he might protect and defend them for the owner in case they should be brought into jeopardy, I should consider a bond or promise afterwards given by the owner to his friend to indemnify him for the advances on account of any proceedings against the property or otherwise, to constitute a part of the *res gestæ*, or of the original transaction, though it purports to be a new contract. For it would clearly be a promise growing immediately out of, and connected with, the illegal transaction, and the party to whom the promise was made would, by such a contrivance, contribute in effect to the success of the illegal measure."

Of this charge the court said: "It is laid down with great clearness that if the importation was the result of a scheme between the plaintiff and defendant, or if the plaintiff had any interest in the goods, or if they were consigned to him with his privily that he might protect and defend them for the owner, a bond or promise

given to repay any advances made in pursuance of such understanding or agreement would be utterly void."

In the same case the court said: "One of the strongest cases in the books is Steers v. Laishley, 6 Term Rep., 61, where the broker, who had been concerned in stock jobbing transactions and had paid the losses, drew a bill of exchange for the amount on the defendant, and, after its acceptance, endorsed it to a person who knew of the illegal transaction on which it was drawn, the court held that such indorsee could not recover on the bill. In this case the broker himself could not recover, being a party in the original offense against the law, and his bill being drawn for the very money which was due on the original transaction and endorsed to a person having notice, left the indorsee in the same situation with the drawer. Yet, Lord Kenyon said in this case, that if the plaintiff had lent the money to the defendant to pay the differences, and had afterwards received the bill for the money so lent, he might have recovered on it. The difference between the case decided, and that put by the judge, is not very discernible, as the one or the other may affect morals or the policy of the law."

The case of Irwin v. Williar, 110 U. S., 510, was one brought by brokers to recover sums advanced by them on contracts alleged by the defendants to be similar to those set up by the answer in this case, and in disposing of the case it was said: "But we are also of the opinion that when the broker is privy to the unlawful design of the parties and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself in behalf of either in forwarding the transaction." This case was not based on an express promise to pay, made after the transaction had occurred, but it seems to us this does not affect the principle.

If the course of business is such that the broker is expected to make advances, then his employment is a request to him to do what the course of business requires, and the liability to repay will depend on whether the transaction in which the payment was made was legal or illegal, and not upon the existence or non-existence of a promise to pay made before or after the transaction.

The services are performed—the thing, legal or illegal, is done—in such cases, under the request of the client, but the broker knowingly becomes an actor through which the thing is to be accomplished, and contracts to perform the acts necessary to its achievement, and can a claim by him to compensation for services rendered or money paid, under such circumstances, if the thing done is illegal, consti-

tute a valid consideration to support any contract whether express or implied? We think not. The vice which attaches to the thing done, towards the accomplishment of which the services rendered or money paid went, adheres to it, and it matters not what the request may have been or the promise may be, a valid consideration cannot be found to support either.

We are drawn back to the act which the parties originally contemplated, which they together, or the one for the other, undertook to perform, in reference to which they must all be considered actors, and by the legality or illegality of that must the rights of the parties be determined.

The law implies a promise to pay when one person, at the request of another, discharges for him to a third person a legal obligation, or performs for him some lawful service; but when the request is to do some act illegal in its nature, and out of the act itself springs the claim of one of the actors, then no [promise to pay can arise in favor of the actor from his compliance with the request, for in such case there is no valid consideration to support a promise express or implied.

The answer, in effect, alleges that the consideration for the notes sued on is in part the services of the appellees in negotiating and conducting the enterprise, which, under the answer, we have held illegal. If this is so, that would vitiate the contract evidenced by the notes, even if at the request of the appellant the appellees had paid some money for him on legal demands, for it is well settled, "if any part of a consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal." 1. Parsons on Contr., 457. It matters not whether the consideration is illegal because it consists of some act prohibited by statute or because it violates some rule of the common law.

We do not, however, wish to be understood as placing the decision of this case solely on the ground last mentioned, but upon the broad and wholesome principle that, as between parties to illegal transactions, no one of them can recover for anything done or promised in carrying out the illegal enterprise. It matters not what the form of the undertaking may be, such acts, whether they consist in services or in the expenditure of money, on request, cannot constitute a valid consideration.

The cases before cited go to the invalidity of such contracts as that set out in the answer, and refer to many other cases, English and

American, which illustrate the question as between the pretended purchaser and buyer, and between them and a broker who may serve them in such operations. Some of those cases were under statutes which forbade gambling transactions, but that makes no difference, in the view we take of the question, as to their applicability.

The case of Barnard v. Backhaus, 52 Wis., 603, was a suit by holders of a note made by a client to his broker, in consideration of substantially the same facts as are set up in the answer in this case. In disposing of the question of the liability of the maker of the note and of its validity, the court said: "Now, what were Bartlett & Mohr employed to do? What the evidence shows they did do, was to enter into these gaming contracts for Backhaus. They were engaged equally with him in the transaction of illegal business, and the fact that they were executing orders of their principal does not render their conduct in the matter any the less blameworthy. All were engaged in the furtherance of illegal objects—making contracts which were unlawful, consequently a note given for money which they paid in the settlement of their contracts is tainted with illegality."

In Fariera v. Gabell, 89 Pa. St., 91, it was insisted, as in the case before us, that a note given was valid, but the court said: "It is, however, contended by the plaintiff's counsel that even if these were gambling operations on Gabell's part, and so understood by Fariera, he should still in equity and good faith be paid for the services which he rendered as Gabell's agent, and Gabell cannot rely on a fault which was common to both as a defense; and it is said in support of this proposition that one who lends money knowing that the borrower intends to gamble with it, may recover it back. This may, perhaps, be true as between such a borrower and lender, but I am clearly of opinion that one who should undertake to make a bet or wager for another, and advance the money staked, would have no right of action against his principal in the event of loss, and I can see no difference between such a case and that of an agent who renders services and expends money in conducting any other gambling operation."

We are not without adjudications in this state bearing on the question before us. The case of Monroe v. Smalley, 25 Tex., 587, was brought to recover money won at the licensed game of ten-pins, for which a note was given by the loser, and this court held it void. In the case of Connor v. Mackey, 20 Tex., 748, the action was brought on a note under seal, given for money lost at a game with cards, and, as in this case, the consideration was attacked by a sworn plea. This

court held that the contract was void, not because the game was in violation of the statute against gaming, but because it was contrary to good morals and public policy, and the opinion cites Norvell *v.* Oury, 13 Tex., 31, as authority for the proposition.

We are of the opinion that the answer presents a good defense to the action, and that the court erred in sustaining the demurrer to it.

The judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 8, 1885.]