ZIELINSKI v. HERNIG. (No. 239.)

(Court of Civil Appeals of Texas. Beaumont.
June 4, 1917. Rehearing Denied
June 13, 1917.)

BILLS AND NOTES ⬡➡375—INNOCENT PURCHAS-
ER—ILLEGALITY OF TRANSACTION—EFFECT.

A note given for issuance of corporation stock
in violation of statute is not void and unenforce-
able by a purchaser in due course before matu-
rity for a valuable consideration and without no-
tice of the infirmity.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 971–981.]

Appeal from Harris County Court; Murray
B. Jones, Judge.

Suit by Peter Hernig against A. J. Ziel-
inski. Judgment for plaintiff, and defend-
ant appeals. Affirmed.

E. V. Hardway, of Houston, for appellant.
Hunt & Teagle and Campbell, Myer, Myer &
Freeman, all of Houston, for appellee.

BROOKE, J. This suit was instituted by
the appellee against the appellant to re-
cover on two promissory notes dated Au-
gust 28, 1914, executed and delivered by the
appellant to John H. Jones, each for the
sum of $250, maturing two and four months
after dates, respectively, and being payable
in Houston, Harris county, Tex., and draw-
ing 6 per cent. interest. Appellee further al-
leged that before maturity of each of said
notes, he purchased the same in good faith,
in due course for a valuable consideration
from the said John H. Jones, and that at the
time of the institution of said suit he was
the legal and equitable holder and owner
thereof. Appellee further alleged that at
the maturity of said notes he caused the
same to be protested in due course, the pro-
test fees amounting to $11.35, and appellee
sued to recover the amount of said notes
and protest fees.

The appellant, in addition to general de-
murrer and general denial, by way of spe-
cial answer, pleaded that the notes were
without consideration, and were obtained by
the said John H. Jones from him fraudu-
lently, and that the appellee, at the time he
acquired said notes, knew of said fraud and
failure of consideration for the notes, and
did not pay an adequate consideration there-
for, and that the appellee and John H. Jones
conspired together for the purpose of cheat-
ing and defrauding the appellant. Appellant
further pleaded that said notes were given
in payment for stock of the Gas Products
Company, a Delaware corporation, and that
stock was issued to him in consideration of
said notes, and before either of said notes
were mature or paid, and that the notes,
being issued in payment for stock of a cor-
poration, were void and unenforceable.

Upon the trial had upon the 18th day of
February, 1916, a jury, which had therefore
been demanded, was by both parties waived,
and the whole case submitted to the court,

who took the case under advisement, and on
February 18, 1916, found for the appellee
and rendered judgment against the appel-
lant in appellee's favor for $532.34, with 6
per cent. interest from the date of said judg-
ment until paid. Motion for new trial was
filed and overruled, and notice of appeal
given, and the case is before this court prop-
erly for adjudication.

In addition to the above statement, it will,
perhaps, be well to set out the findings of
fact and conclusions of law found by the
court, as follows, to wit:

"Findings of Fact.

"I find that on the 28th day of August, A. D.
1914, in the city and state of New York, the
defendant executed and delivered to John H.
Jones the two notes sued on, dated August 28,
1914, for the sum of $250 each, maturing two
and four months after date, respectively, pay-
able in Houston, Harris county, Tex., and draw-
ing interest at the rate of 6 per cent. per an-
num, together with two other notes for the sum
of $250 each, but which are not involved in this
suit.

"(2) I find that said notes were given by the
defendant to the said John H. Jones in pay-
ment for stock of the Gas Products Company,
a corporation not then in existence, but which
was later incorporated on the 14th day of Sep-
tember, 1914, under the laws of the state of Del-
aware and having its principal office in Dela-
ware, the purpose of said corporation being the
transaction of a manufacturing business and
other purposes; and at the time of the execu-
tion of the notes, it was agreed by Jones that he
would immediately issue said stock to defend-
ant; that thereafter on the 20th day of Sep-
tember, 1914, certificates for $2,000 in stock of
said corporation were issued to said defendant
by said Gas Products Company in consideration
of the execution of said notes, and that said
stock was issued and delivered to the defend-
ant before any of said notes were mature or
paid.

"(3) I find that John H. Jones at the time of
the execution of the notes was engaged in pro-
moting what was afterwards known as the Gas
Products Company, a Delaware corporation, and
at the time of the incorporation of said company
said John H. Jones became its president, and
shortly thereafter the stock in said corporation
was issued to the defendant and was signed
by said corporation through said John H. Jones,
as president.

"(4) I find that prior to the execution of the
notes defendant had known John H. Jones for
only a few days, and that there was no fiduciary
relationship between them; that Jones repre-
sented to defendant that the stock was a good
business venture and would pay good returns.
Defendant believed the representations made by
Jones and acted upon them.

"(5) No evidence was introduced on the trial
to show that the corporation laws of Delaware
and New York are in any wise different from
those of Texas.

"(6) I find that said notes were on the 4th
and 9th days of September, 1914, respectively,
indorsed in blank by the said John H. Jones and
delivered to the plaintiff herein, and that plain-
tiff paid value for said notes, and bought same
before maturity and in the usual course of busi-
ness and with no notice, actual or constructive,
of any vice or infirmity of the paper as be-
tween the immediate parties thereto.

"From the foregoing facts I arrive at the fol-
lowing conclusions of law:

---

⬡➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Conclusions of Law.

"(1) Whatever may have been the legal effect of the representations and dealings prior and at the time of the execution of the notes between Jones and the defendant, the defendant was the author of the notes and put them in circulation, and plaintiff is an innocent purchaser of said notes for value, and under the laws of this and other states is entitled to protection as such, and is entitled to a judgment against defendant for the amount of said notes, with interest and costs.

"(2) I further conclude that the notes having been executed in consideration for the promise of Jones to deliver the stock in the corporation are probably invalid and unenforceable as between the parties, unless the fact that the corporation was not then in existence would make the transaction merely a subscription for stock. I do not deem it necessary to pass on this question, that is, as to whether the transaction between Jones and Zielinski was a straight out sale of stock, or whether it was a subscription to stock."

The assignments of error are:

(a) Because the court erred in rendering judgment for plaintiff against defendant, because the judgment rendered herein is contrary to the law, and is not supported by the evidence adduced on the trial of said cause.

(b) Because the judgment is rendered against the weight and preponderance of the testimony.

(c) Because as a matter of law the plaintiff is not entitled to recover.

The proposition is as follows:

"A note given in an illegal transaction, i. e., one forbidden by a statute, expressly or by necessary implication, is void and unenforceable by any one, even by a purchaser, in due course, before maturity, for a valuable consideration and without notice of the infirmity thereof."

This question has been raised in various forms in a great many of the courts of this state heretofore. It was raised and passed upon by the Supreme Court in the case of Thompson v. Samuels (Sup.) 14 S. W. 143. We transcribe in full the opinion of the court in that case, for the reason that we believe the correct solution of a proposition heretofore rather obscure in this state has been reached. The opinion, which was rendered by Acker, Justice, is as follows:

"It is contended that the court erred in rendering the judgment for defendant because, 'the evidence having shown that the note sued on had passed into the hands of an innocent purchaser for value before maturity, and without any notice of an illegal consideration, the fact that it may have been given for a gambling debt would not relieve the maker thereof.' If the suit was by Hilmbrower to enforce the payment of a note given by Samuels for money lost by gaming, there could be no doubt that the defense interposed by Samuels would be good, for we believe it to be settled by the decisions in this state that such contracts are voidable as between the parties thereto, and also between the maker and indorsee after maturity, and will not be enforced by the courts if the defense be properly interposed. Norvell v. Oury, 13 Tex. 31; Connor v. Mackey, 20 Tex. 747; Monroe v. Smelly, 25 Tex. 586 [78 Am. Dec. 541]; Donnelly v. Bank, 3 Willson, Civ. Cas. Ct. App. § 169. But it is contended by appellee that the note sued on was not only voidable, but void, and therefore incapable of enforcement even in favor of an innocent indorsee for value before maturity; and

the authorities supra are relied on in support of this contention. It is true that, in several of the cases cited, it is said that such contracts are void; but, upon a careful examination of the decisions by the Supreme Court, we are induced to believe that the word 'void' is used more through inadvertence than by design. If such contracts are void, then the illegality of the consideration may be made available as a defense under all circumstances, without regard to the innocence and good faith of the holder.

"The case of Norvell v. Oury, 13 Tex. 31, was a suit by the payee against the maker of the note for money lost at a game of cards. The defense was pleaded, and sustained by verdict and judgment in the trial court. On appeal it was contended that, the contract being valid in the state where it was made, the court erred in charging the jury that, if they believed that the consideration for the note was money lost by gaming, they should find a verdict for defendant, it matters not where the contract was made. It was held that the charge was not error, because plaintiff had not pleaded that the contract was made at a place where the law recognized it as valid, and could not, therefore, have proved it. The court remarked, in concluding the opinion, that, 'Until the question is presented properly * * * for our decision, we will forbear the expression of an opinion whether a contract founded on a gambling consideration invalid by our own law can be enforced in our courts when entered into in a foreign state, where such consideration would be valid and lawful.' The opinion does not hold such contracts void. The case of Connor v. Mackey, 20 Tex. 748, was a suit by the payee against the makers on a note given for a gambling consideration. The defense was pleaded, and sustained by the evidence and judgment. Justice Wheeler, in delivering the opinion of the court, uses this language: 'The case of Norvell v. Oury, 13 Tex. 31, is an authority for holding that a note given for money won at cards is void by our law.' We have just seen that the case of Norvell v. Oury did not so hold, but simply that the defense was available in that suit between the parties to the contract; and that case is not an authority for the use of the word 'void' in Connor v. Mackey. We are therefore persuaded that Justice Wheeler used the word in the sense of 'voidable,' as many distinguished judges have done before and since his opinion in Connor v. Mackey. The case of Monroe v. Smelly, 25 Tex. 586 [78 Am. Dec. 541], was a suit on a promissory note for money lost at a game of tenpins, and transferred to the plaintiff by the payee after maturity. In delivering the opinion of the court, Justice Bell said: 'The uniform tendency of the later decisions is to treat all gaming contracts and all wagers as utterly void.' And again: 'We think that, in the true spirit and meaning of the exceptions to the old rule, all idle wagers, and all gaming contracts, may properly be held to be void.' The plaintiff in the case of Monroe v. Smelly, having acquired the note after maturity, was in no better condition than the original payee would have been. The decision of the Court of Appeals in the case of Donnelly v. Bank, in which it is held that such contracts are void, is placed upon the authorities just considered and reviewed, in none of which, it will be observed, was it necessary to do more than hold the contract voidable to sustain the conclusion reached. The case of Connor v. Mackey, 20 Tex. 748, rests upon the authority of Norvell v. Oury, 13 Tex. 31; and the case of Monroe v. Smelly, 25 Tex. 586 [78 Am. Dec. 541], rests upon the authority of the two preceding cases. So the case of Donnelly v. Bank rests upon the authority of Norvell v. Oury, which we have seen is no authority for the doctrine that a contract entered into upon a gaming consideration is void. Following the inevitable sequence of this doctrine, it was held in the case of Donnelly v. Bank that a note given for a gaming considera-

tion, 'is void even in the hands of an innocent holder for a valuable consideration.' This conclusion is rested upon the following authorities: Unger v. Boas, 13 Pa. 601; Tidmore v. Boyce, 2 Mill, Const. (S. C.) 200·; Holman v. Ringo, 36 Miss. 690; Chapin v. Dake, 57 Ill, 295 [11 Am. Rep. 15]; 7 Wait, Act. & Def. 87, 88. In Wait's Actions and Defenses, it is said: 'So a note or other security given in consideration of money won at gaming is void even in the hands of an innocent holder for a valuable consideration.' The Texas cases of Connor v. Mackey and Monroe v. Smelly, being cited in support of the doctrine that such contracts are void, and the other authorities last cited by the Court of Appeals in Donnelly v. Bank, are cited by Wait in support of the doctrine that such contracts are void even in the hands of an innocent holder for value. We have carefully examined the cases of Unger v. Boas, 13 Pa. 601, Holman v. Ringo, 36 Miss. 690, and Chapin v. Dake, 57 Ill. 295 [11 Am. Rep. 15], and find that these decisions rest upon statutes expressly declaring all such contracts void. We have not been able to see the case of Tidmore v. Boyce, 2 Mill, Const. (S. C.) 200; but we believe it will be found that it rests, as do the others, upon a statute denouncing as void all contracts entered into upon a gaming consideration. In the absence of such statutes, we do not believe authority can be found for holding that the maker of a negotiable promissory note can defend against it, in the hands of an innocent holder for value, upon the ground that it was given in consideration of money won at gaming.

"In 1 Daniel, Neg. Inst. par. 197, it is said: 'The bona fide holder for value, who has received the paper in the usual course of business, is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed "mala in se," and those found in positive statutory prohibition, which are termed "mala prohibita." The law extends this peculiar protection to negotiable instruments because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule—that, when a statute expressly, or by necessary implication, declares the instrument' absolutely void, it gathers no vitality by its circulation in respect to the parties executing it, though even upon such instruments an indorser may * * * be held liable.' In Vallett v. Parker, 6 Wend. [N. Y.] 615, it was said: 'Wherever the statute declares notes void, they are and must be so in the hands of every holder; but, where they are adjudged by the court to be so for failure or illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had notice of, the consideration.' To the same effect are the following authorities: Story, Prom. Notes, par. 192; Pars. Cont. 457, 458; Story, Bills, par. 189. While gaming of various kinds is denounced by our Penal Code, we have no statute in this state declaring that all contracts entered into upon gaming considerations are void. We are of opinion that the court below erred in rendering judgment for the defendant; and, as there· is no controversy as to the facts that appellant acquired the note before its maturity for a valuable consideration, and without notice of any vice in the consideration for which it was executed, and that the notes remain unpaid except the sum of $4.50, credited thereon as interest, the judgment of the court below is reversed, and judgment is rendered here for appellant for the amount for which the note was given, and interest at 10 per cent. per annum from the 1st day of September, 1887, less the credit thereon, and all costs."

In addition to the opinion set out above, the matter has recently received thorough consideration in a most learned opinion written by Chief Justice Huff of the Amarillo Court of Civil Appeals, in the case of Lockney State Bank v. Martin, reported in 191 S. W. 796. A portion of said opinion is as follows:

"The note on its face shows to be a plain, promissory, negotiable note, payable to R. L. Underwood or order, and without any indication on its face for what it was given or that the Bankers' Trust Company was in any way connected with it. The facts are uncontroverted that Underwood took the note and traded it to Waller & Dyer for an automobile in the town of Floydada; that they took this note in part payment of· the automobile, together with some horses and a small amount of money; that Underwood represented to them that Martin had executed to him the note in payment of a span of mares that Underwood had sold to Martin. The evidence is conclusive that this note was then indorsed in blank by Underwood and delivered to Waller & Dyer, and that it was so transferred before maturity. Some of the testimony is that it was transferred in the latter part of February. Martin himself shows that he knew that Underwood had the automobile not later than in June following its date. There is no controversy in the testimony but that Waller & Dyer paid value before maturity of the note, and that they had no notice that it was executed for stock in the corporation. The evidence also shows that within a few days after selling this auto to Underwood for the note, in a deal for another auto in the town of Amarillo, Waller & Dyer procured the money from appellant bank to pay therefor, executing their note for something over $600, and put the note in question up with the bank as collateral security therefor. All the bank officials testifying state that they had no notice or knowledge that this note was given for stock in the corporation. Martin himself admits that he never told any of these parties that he had executed the note on that consideration. The evidence is certain that neither the bank nor Waller & Dyer had any notice of the consideration for the note until after its maturity. There is an assignment to the effect that the evidence does not conclusively show that the Bankers' Trust Company issued the stock to Martin for the note. Without discussing this evidence, we are inclined to believe the testimony was not so conclusive to that effect that the court was authorized to take the case from the jury, but that he should have submitted the question to the jury.

"On the question of whether or not an innocent holder can recover on ·a note given for stock in corporation, the decisions of this state leave the question very much in doubt. This court, in the case of Prudential Life Insurance Co. v. Smyer, 183 S. W. 825, held that a note given for stock in a corporation is void in the hands of an indorsee for value, and without notice of its illegal issue. A writ of error has been granted by the Supreme Court in that case, on the ground, so we are informed, that there is doubt by that court as to the correctness of the holding with reference to an innocent holder of such note. The Court of Civil Appeals for the Fifth District, in the case of Republic Trust Co. v. Taylor, 184 S. W. 772, reached the same conclusion as did this court in the Smyer Case. In F. & M. Bank v. Falvey, 175 S. W. 833, the Court of Civil Appeals for the First District announced the same rule, while the question was not there necessary to a decision of the case. This court, in the case of Jones v. Abernathy, 174 S. W. 682, announced substantially the same rule, but not on a note given for

stock. It should be noted, however, the holding therein was based upon a statute which expressly provided such indebtedness secured by a lien upon railroad property, without complying with other provisions of the act, should be void. In the case of Sturdevant v. Falvey, 176 S. W. 908, the court found and held in that case that the indorsee had notice that the note was given for the issuance of stock by the note itself. The action of the Supreme Court in the Smyer Case, having cast a doubt on the correctness of the holdings by this court, has induced us to again enter into an examination of the authorities, which has resulted in bringing us to the same condition of mind the Supreme Court appears to be in. 'The protection which the law extends to an innocent holder, who for value in the usual course of trade has received negotiable paper, is of no avail where the the statute in terms, or by unavoidable implication, has pronounced the instrument absolutely void.' Ruling Case Law, vol. 3; Bills and Notes, par. 225.

"As a general rule, one who executes a negotiable instrument, knowing it is subject to barter and sale in the commercial world, and does not put into it words which give warning to others not to buy it, is estopped to make a defense after it has passed into the hands of the holder in due course of trade. 'Wherever the statutes declare notes void, they are and must be so in the hands of every holder; but where they are adjudged by the court to be so, for failure or illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with or have had notice of the consideration.' Vallett v. Parker, 6 Wend. (N. Y.) 615. The above is cited and quoted in Bohon's Assignee v. Brown, 101 Ky. 354, 41 S. W. 273, 38 L. R. A. 503, 72 Am. St. Rep. 420. 'The effect of illegality on a bona fide purchaser is held by the authorities to be different from that of mere insufficiency of consideration, at least in certain cases. Where the consideration is declared by the decisions of the court or by statutory enactments to be simply void on account of illegality, it does not affect the validity of the contract any more than the mere absence of a consideration would affect it; and the bona fide holder of a commercial instrument would nevertheless be able to maintain his action upon it. But where the statute making the consideration illegal declares a contract founded on such a consideration to be absolutely void, the language of the statute must be given its proper effect, and so the courts have held that the commercial paper founded on such consideration is void, even in the hands of bona fide holders.' Tiedemann on Commercial Paper, par. 178. 'Where the statute merely declares expressly or by implication that the consideration shall be deemed illegal, the bill or note founded upon such consideration will be valid in the hands of a bona fide holder without notice, but the burden of proof will be upon the plaintiff.' 1 Daniel on Negotiable Inst. par. 198.

"The constitutional provision (article 12, par. 6) with reference to issuing stock is: 'No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void.' Article 1146, R. C. S., provides that a corporation violating this provision forfeits its charter; and article 1147, R. C. S., provides when stock is issued for anything but money, labor, or property, the Attorney General may institute quo warranto proceedings to cancel and hold for naught such stock. These provisions and others, it appears to us, simply show that the law applies to the corporation and its stockholders, rendering the issuance of stock without money paid illegal, and the stock therefore void. It does not occur to us that the Constitution or the statutes intended to inflict upon innocent third parties a

penalty that should be borne by a corporation or stockholder seeking to foist upon the public a worthless concern. The execution of a note for such stock is doubtless void as between the corporation and the maker of the note. The Constitution and laws do not declare the contract absolutely void, the consideration of which is void or illegal. It must, if so held, be adjudged by the courts on the ground that the note is given for an illegal or void consideration. It is not by an unavoidable implication from the wording of the law made manifest that it was the purpose thereof to declare such note void absolutely as to all the world. It is the issuance of the stock for the note which is forbidden. It is such act which subjects the corporation to a forfeiture of its charter and which will cancel the stock. It appears to us that in construing the Constitution it has been treated as if it declared the note given for the stock absolutely void. This is not our interpretation. It declares the issuance of stock, or, in other words, the consideration for the note, illegal or void. Union Trust Co. v. Preston National Bank, 136 Mich. 460, 99 N. W. 399, 112 Am. St. Rep. 370 [4 Ann. Cas. 347]; Hart v. Livermore, 72 Miss. 809, 17 South. 769. Certain conditions may arise which would estop the corporation or stockholder from defeating the obligation. The law which is intended to protect innocent third parties ought not to be construed so as to defraud others who do not know of such fraud or illegal acts. The doctrine of estoppel has been applied by this court to notes of this character in the interest of the creditors of a corporation upon it becoming insolvent. We held a corporation in such a situation would preclude the contention by the maker that the note was void. McWhirter v. First State Bank, 182 S. W. 684; Thompson v. Bank, 189 S. W. 116. If this proposition there announced is sound, the note is not absolutely void as to all the world. If the maker in that instance could not defeat the creditors out of collection, the reason is as strong, it occurs to us, that the maker should not defeat an innocent purchaser of his note, which he had knowingly placed in circulation without any evidence of its character or the consideration upon which it was based. He should be estopped from claiming that he executed it in violation of the law and for the purpose of defeating the law. The case of Mason v. Bank, 156 S. W. 366, is cited in the Taylor Case, supra, apparently as supporting the proposition that the note is absolutely void. In that case the court held according to the plea that the holder had notice of the note's infirmities, and hence he stood in the shoes of the original payee. The Mason Case, also, while apparently holding the note void, yet distinguishes it from Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015, and Nenny v. Waddill, 6 Tex. Civ. App. 244, 25 S. W. 309, on the ground that those cases were brought on behalf of the creditors of the corporation. Those cases evidently recognized the rights of creditors to be the same as found by us in the Thompson and McWhirter Cases, supra. The case of Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593, is cited in the Taylor Case as supporting the contention that the note is absolutely void in the hands of an innocent holder. In that case the note was given for a debt growing out of 'cotton futures.' Judge Stayton, who rendered the opinion, was careful to hold that as between the parties it was void. Davis v. Sittig, 65 Tex. 497. The note in that case, though negotiable in form, was transferred without indorsement, was not in the possession of the payee, and the assignee was not shown to have paid value. In Wegner Bros. v. Biering, 65 Tex. 506, the question of innocent purchaser was not involved. The suit was brought by the payee in the note, who was charged with the illegal act in obtaining the agreement to pay. The question discussed in

that case was whether the entire note was tainted, since part of it was for a valid debt, and the other portion for an illegal consideration.

"In the case of Thompson v. Samuels (Sup.) 14 S. W. 143, the facts, as stated by the court, are: Ben Hilmbrower was indebted to J. R. Mahone, and Mack Samuels owed Hilmbrower $100 for money lost at a game of cards. Hilmbrower drew a draft on Samuels in favor of Mahone for the $100. In settlement of the draft Samuels executed and delivered his promissory note, dated March 1, 1887, payable to Mahone or bearer six months after date. Mahone transferred the note by indorsement to John C. Thompson, before maturity, for a valuable consideration, without notice of any vice or illegality in the consideration for which it was given. The Commission of Appeals rendered the opinion in that case. Judge Acker reviewed various decisions in this state and others declaring that a gambling note was void and some that it was void in the hands of an innocent holder. After citing cases from various states the court in the Thompson Case said: 'That these decisions rest upon statutes expressly declaring all such contracts void,' and 'in the absence of such statutes, we do not believe authority can be found for holding that the maker of a negotiable promissory note can defend against it, in the hands of an innocent holder for value, upon the ground that it was given in consideration of money won at gaming.' 1 Daniels on Negotiable Instruments par. 197, is also quoted, and also the excerpt quoted by us from Vallett v. Parker, 6 Wend. (N. Y.) 615, and then concludes: 'While gaming of various kinds is denounced by our Penal Code, we have no statute in this state declaring that all contracts entered into upon gaming considerations are void.'

"In the case of State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564, the Supreme Court cites the case of Thompson v. Samuels with approval. It is said in that case: 'In Thompson v. Samuels (Sup.) 14 S. W. 143, the question now before the court was presented and decided. In writing the opinion Mr. Justice Acker reviewed prior decisions of this court at length and arrived at the conclusion that, while some of the opinions used the expression that contracts similar to that then under consideration were void, yet the court did not mean to hold such contracts to be void in the sense that they were not enforceable as between the maker of the contract and an innocent holder for value.' It was further said therein that the Thompson Case had not been officially reported, 'but it is authority, and appears to be the latest authority, from this court upon the question.' The expression or use of the term 'void' is used in the Deutschmann Case, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, with reference to contracts in violation of the provision of the Constitution now under consideration. The opinion in the Holland Case, supra, was written by the same judge, and is, we think, persuasive that the court only used the term 'void' as applicable between the original parties and persons having notice of the infirmity of the note.

"In Campbell v. Jones, 2 Tex. Civ. App. 263, 21 S. W. 723, it was held the holder of a note by indorsement before maturity for value, and without notice of the defense against the original payee, could recover, even though it was given in consideration of intoxicating liquors sold to the maker in violation of the law and the bond executed by the sellers, to the effect that they would not sell to habitual drunkards, nor to persons after having received notice from the wife, mother, etc. In the case of Scheffel v. Smith, 169 S. W. 1131, it is held a note given for commission on the sale of stock in a corporation in violation of the law could not be defeated in the hands of an innocent purchaser. It is said therein: 'The laws of this state do not expressly or by necessary implication declare void a note giv-

en for commissions on a sale of the stock of a corporation; * * * therefore, under the rule quoted in State Bank of Chicago v. Holland, the protection of the law is extended to the instrument here sued upon and to the appellee as a purchaser thereof for value before maturity and without notice of any infirmity in its execution.'

"In Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593, it is there expressly held that the broker who effected the sale was a particeps criminis, and could not recover for services rendered or money paid in the sale of the cotton futures. By analogy and the principles of law, if a note given for a commission earned in the sale of stock is good in the hands of an innocent holder, the note given for the stock should be held good under the same circumstances. Snoddy v. American National Bank, 88 Tenn. 573, 13 S. W. 127, 7 L. R. A. 705, 17 Am. St. Rep. 918, is frequently referred to by the various courts and commentators as authority for the proposition that a note given for a gambling debt is void in the hands of an innocent holder. Thompson v. Samuels, above cited, rendered by our court, based on statutes against gambling, reached a different conclusion, on the ground that our statutes do not so declare the note void. It will be seen upon investigation that nearly all the cases holding a note void in the hands of an innocent holder are based on statutes expressly so declaring. It appears to us, after examining quite a number of authorities, that the rule that should govern this case is stated in Sondheim v. Gilbert, 117 Ind. 71, 18 N. E. 687, 5 L. R. A. 432, 10 Am. St. Rep. 23: 'The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the Legislature that the illegality insisted upon shall make the security, whether contract, bill, or note, void; but, unless the Legislature has so declared, then, no matter how illegal or immoral the consideration may be a commercial note in the hands of an innocent holder for value will be held valid and enforceable.' See, also, Union Trust Co. v. Preston National Bank, 136 Mich. 460, 99 N. W. 399, 112 Am. St. Rep. 370 [4 Ann. Cas. 347]; Pope v. Hanke, 155 Ill. 617, 40 N. E. 839, 28 L. R. A. 568; Lynchburg National Bank v. Scott, 91 Va. 652, 22 S. E. 487, 29 L. R. A. 827, 50 Am. St. Rep. 860; Citizens' State Bank v. Nore, 67 Neb. 69, 93 N. W. 160, 60 L. R. A. 737 [2 Ann. Cas. 604].

"Under the rule above announced, in order for the note to be void in the hands of an innocent holder, the statute or Constitution must expressly, or by necessary implication, declare the instrument absolutely void.' By necessary implication the statute must declare the note absolutely void. Where it is an inference by the court that the instrument is void, because of failure or illegal consideration, it is not void as to an innocent holder. It is against the law to gamble or bet on games. A note given for a debt so created is upon an illegal consideration and void as between the original parties not because the statute so declares, or because of an implication from the terms of the statute. It is against the law to sell intoxicating liquors to an habitual drunkard, and a note for such sale is upon an illegal consideration. The statute does not so declare, neither is it necessarily implied from the wording of the statute that it was the purpose of the act to declare a note so given void; but it is so, if at all, because adjudged to be upon an illegal consideration. The Constitution forbids the issue of stock except for money, etc., but it does not declare a note void executed for that purpose. It may be adjudicated and determined that it is upon an illegal consideration, and therefore void, but it is not a necessary implication from the Constitution that it so declares. The statutes do not declare the note void as a punishment inflicted upon the corpora-

tion, or for any other purpose, but the charter of the corporation may be forfeited and the stockholder's stock canceled. The court may from the constitutional and statutory provisions, adjudge and determine the consideration for the note to be illegal and therefore void, but the statutes do not expressly so declare, nor is it a necessary implication from the statutes that they declare such a note void.

"To hold the statute expressly or by implication declares a note void because it is an inference from the Constitution or statute that the consideration therefor is illegal and therefore void, unless the note is so declared by statute, would be to hold every note based upon an illegal consideration void in the hands of a bona fide holder. That such is not the rule is universally recognized by our courts and all the courts, except in such cases where the statute, as in Georgia, provides the defenses a maker may set up against a bona fide holder, under section 3694 of that state's Code, 'which declares that such a holder, without notice, shall be protected from any defenses set up by the maker, * * * except non est factum, gambling, or immoral and illegal consideration, or fraud in its procurement.' Jones v. Dannenberg, 112 Ga. 426, 37 S. E. 729, 52 L. R. A. 271. We cite in support of this rule Daniels on Neg. Inst.: 'The bona fide holder for value, who has received the paper in the usual course of business, is unaffected by the fact that it originated in an illegal consideration, without any distinction between the cases of illegality founded on moral crime or turpitude, which are termed mala in se, and those founded in positive statutory prohibition, which are termed mala prohibita. The law extends this peculiar protection to negotiable instruments because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. There is, however, one exception to this rule, that when a statute expressly or by necessary implication declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it, though even upon such instrument an indorser may, as we shall hereafter see, be held to be a bona fide holder without notice. There are very few cases in which the statute renders such instruments absolutely void, and the most important, if not the only, instance now to be met with are the statutes against usury and gaming.' Daniel on Neg. Inst. par. 197; also sections 807 and 808.

"It will be observed that in Thompson v. Samuels, supra, our court held a note for a gambling debt not absolutely void on the ground that our statute did not so expressly declare. In the case of Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031, the rule stated by Daniels is recognized as to usury. The statute of this state provides that when usury is charged the contract for interest is void. We therefore hold, under the established rule by all or nearly all of the courts, and by all the writers on negotiable instruments, that a note given for the issuance of stock in a corporation is void as between the original parties to the note and those with notice or who have not paid value; but in the hands of the holder, who acquired it before maturity for value, without notice of its infirmities, and in due course of trade, it is not as to such holder void."

The two opinions referred to above and which we have liberally quoted have considered perhaps the larger part of the opinions heretofore handed down in this state with reference to the matter.

After having considered the matter as thoroughly as was possible with the authorities that we have, we are of opinion that the reasoning of the court in the last case above cited, and the conclusion arrived at, are both sound and abundantly supported by authority, and that the conclusion is, and of right should be, the law in this state upon the matter. The protection thrown around the innocent purchaser of commercial paper, in our judgment, and in so far as can be legitimately accomplished, should be strengthened by our courts, and the vitality of same should not be impaired without a clear necessity, or a legislative enactment demand that it should be done. We are not unmindful of the fact that learned judges are in seeming conflict with the views above announced, and which we have adopted as the views of this court, but we are constrained to believe that the views announced and adopted by this court are founded upon the right, and that they will prevail. We are therefore of opinion, after having considered the assignments of error, that as the whole matter is to be decided, not upon whether or not the notes were enforceable as between the original parties, because in our judgment they are not enforceable between the original parties in this cause, but the rights of the innocent purchaser for value creates a different situation, in our judgment, and therefore we deem it unnecessary to pass upon the rights, specifically, that have arisen or might arise between the original parties to this controversy.

Being of the opinion that the judgment of the lower court, as announced, is correct, each of appellant's assignments is therefore overruled, and the judgment of the lower court is in all things affirmed.

---

&#8658;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes